Chapman *v.* Bates,

## CHARLES E. CHAPMAN

*v.*

## THEODORE C. BATES and WILLIAM H. LEE.

[Submitted May 17th, 1900.   Decided June 14th, 1900.
Filed February 11th, 1901.]

Where much time and labor were expended, and valuable contingent rights were acquired in compensation for their services, by stockholders in a corporation, in reliance on a proxy and power of attorney given them by the majority stockholders, conditioned to be irrevocable for a certain term, and giving possession and control of the stock in trust to carry out the corporate purposes for their equal benefit, with power to sell or exchange the same, equity will not revoke such document during such term, in the absence of misconduct or breach of trust.

Heard on bill and answer.

2

*Mr. Charles L. Corbin,* for the complainant.

*Mr. Charles D. Thompson,* for the defendants.

PITNEY, V. C.

The complainant is the registered holder of fifty-one shares of $100 each of the capital stock of the Union Terminal Association, a corporation organized under the laws of the State of New Jersey, by certificate filed on July 6th, 1898.

The object of the bill is to revoke and set aside a power of attorney and proxy executed by the complainant on July 6th, 1899, granting to the defendants, Bates and Lee, extensive powers over the shares of stock so held by him, and to procure a return to him of the certificates of the same, which were delivered to the defendants with the power of attorney and proxy.

The power of attorney and proxy is precisely like one previously given by the complainant to the defendant Bates and one Amory. Mr. Amory becoming incapacitated by ill-health to perform the duties imposed upon him by the first document, resigned his trust thereunder, and the instrument attacked by complainant's bill herein was executed to the defendants herein, and is called "Proxy and Power of Attorney *B.*" It is too voluminous to be set out at length. Suffice it for present purposes to say that it clearly created the relation of trustee and *cestui que trust.*

The defendants have answered, and the cause was brought to hearing on bill and answer, and, of course, for the purposes of the hearing, the allegations of the answer are taken as true.

The capital stock of the corporation was fixed at $5,000,000, and of this $1,962,900 were issued. The defendants are large holders of this stock.

The object of the incorporation was not only, as set out in the bill, "to purchase, sell and dispose of shares of stock and securities of certain railroad and other corporations in the State of Missouri," but, by means of such purchase, to become the proprietor of a railway and road bridge across the Missouri river

at Kansas City, Missouri, and, in connection therewith, of a union railway station within the limits of that city.

In pursuance of that object, the company, shortly after its organization, purchased ninety-six per cent. of the capital stock of the Kansas City and Atlantic Railroad Company, amounting to over two millions of dollars; all the stock of the Terminal Improvement Association of Kansas City, amounting to $200,000; a majority of the stock of the Missouri Agricultural and Fair Grounds, of Gallatin township, Missouri, amounting to $48,000, out of a total of $90,000, and also all the outstanding first mortgage bonds of the Kansas City and Atlantic Railroad Company, amounting to $600,000; which corporations were seized of rights, privileges, franchises and properties in and about the city, which were valuable for the purpose of carrying out the objects of the corporation.

In the early spring of 1899, in order to successfully carry out those objects, eighty per cent. of the stockholders, in value and number, made the first proxy and power of attorney above mentioned, and afterwards executed "Proxy and Power of Attorney *B.*"

Under the power of attorney here attacked, the defendants, in strict pursuance of the objects of the corporation, have proceeded and done a great deal of work, and advanced large sums of money on the strength of the document in question, which, by its terms, is irrevocable before the 1st day of January, 1902.

The complainant contends that the document is revocable, notwithstanding that clause, upon the principles laid down and acted upon in *Cone* v. *Russell & Mason, 3 Dick. Ch. Rep. 208,* and again in *White* v. *Thomas Inflatable Tire Co., 7 Dick. Ch. Rep. 178,* and the cases there cited. He does not, however, allege any misconduct of the defendants as trustees, or any failure, faithfully and honestly, to perform their duties as such under the power.

The defendants contend that this case is not within the principle of either of those cases, but is within the exception stated in *3 Dick. Ch. Rep. 215,* bottom, as follows: "This conclusion does not reach so far as to necessarily forbid all pooling or combining of stock, where the object is to carry out a particular

policy with the view to promote the best interests of all the stockholders. The propriety of the object validates the means, and must affirmatively appear."

I am of the opinion that the contention of the defendants is sound. The document here sought to be disturbed is something more than a mere proxy, and is quite different in its purposes and objects from that dealt with in *Cone* v. *Russell*. It puts the defendants in the position of actual owners of the stock, subject only to their duty to account, as trustees, to the complainant as *cestui que trust* for their dealings therewith. They have power, by the document, to sell and assign and exchange the shares of stock as they shall see fit; to organize a new corporation, and accept stock in such new corporation in place of the shares of the old corporation.

While the particular objects and purposes of the trust are not stated in the instrument, yet they are stated in full in the answer, and those purposes so stated must be taken to be the real purposes of the project.

The defendants allege that they have expended a great deal of time and labor, and have advanced moneys, and borrowed money, and entered into contracts on the strength of the continued control of the stock during the period mentioned in the instrument, all for the purpose of carrying out the purposes of the corporation, and for the equal benefit of all the stockholders, and they contend, and I think rightly, that under such circumstances it would be inequitable and unjust to deprive them of the power so given to them, without reinstating them in their original condition.

Among other things, they allege that they have offered the stock for sale, and, in effect, given an option on it, and that such offer is liable to be accepted at any time. In case of such sale, the instrument in question gives them a plain right to deduct from the proceeds an amount sufficient to compensate them for their services.

They are themselves stockholders and interested in the success of the corporation. That fact of itself makes the case an exception to some of the authorities relied on in *Cone* v. *Russell*.

Many authorities were referred to by counsel of defendants in favor of his position, which I do not deem it necessary here to cite. Most of them are collected in *38 Am. L. Reg. (N. S.) 48 (January, 1899).*

· I think the present case clearly distinguishable from *Cone* v. *Russell,* and that the complainant's bill fails, and must be dismissed.