(December 31, 1904.)

## PRICE v. GRICE.

[79 Pac. 387.]

LEASE—LEGAL TITLE TO LIVESTOCK—SALE BY LESSOR—ACCOUNTING— TEMPORARY RESTRAINING ORDER—ALLEGATIONS ON INFORMATION AND BELIEF—UNDERTAKING —DEMURRER—AFFIDAVIT —PRACTICE— REMEDY AT LAW—PARTNERSHIP.

1. Where B. and B. lease certain real estate and personal property consisting of livestock and farming implements to G. for a term of five years, on condition that they shall receive one-half of the grain raised on said premises over and above the amount required to feed such livestock, and one-half of the increase and growth of such livestock or one-half of the price for which the same may be sold, the lessors are entitled to an accounting from the lessee each year for their half of the surplus grain, and are

entitled to an accounting for one-half of the proceeds of sales of livestock.

2. Where a lease for a term of five years provides for the sale of the increase of certain livestock, one-half of the amount received therefor to go to the lessors and one-half to the lessee, the lessors are entitled to receive their one-half thereof whenever such livestock is sold.

3. Where the principal allegations in a verified complaint are made on information and belief, and the sources of information and basis of belief are not stated in the complaint but are stated in an affidavit filed in the case, an injunction may be granted thereon if the facts warrant it.

4. Where a restraining order is granted holding the matter *in statu quo* until a hearing thereon is had, and the hearing is had and the restraining order is continued in force upon condition that the plaintiff give a proper undertaking in a certain. sum named, the action of the judge will not be reversed, for the reason that no undertaking was required prior to the hearing. It is error to grant a temporary injunction without requiring a proper undertaking.

5. A judge at chambers has no authority to hear and pass upon a demurrer.

6. Under the provisions of section 4288, Revised Statutes, where the facts are in dispute, the granting or dissolving of an injunction is within the sound discretion of the court.

7. The right to a preliminary injunction is generally addressed to the sound discretion of the court to be exercised according to the circumstances of each case.

8. Where the application for dissolving a preliminary injunction is heard upon the complaint and answer, it was not error for the judge to permit the plaintiff at the hearing to file an affidavit showing the sources of information and basis of belief of the allegations of the complaint which were stated therein on information and belief.

9. Upon a proper showing an injunction may issue to temporarily restrain an act which will result in great damage to the plaintiff although the injury is not irreparable and notwithstanding the plaintiff may have other remedies, following *Staples v. Rossi*, 7 Idaho, 618, 65 Pac. 67.

10. Where B. and B., who are mother and son, each owned certain real estate and personal property consisting of livestock and farming implements, joined in a lease to G. leasing to him such real estate and personal property, B. and B. are not necessarily partners, and under the provisions of the lease involved in this action, B. had a right to sell and dispose of the property belonging

to him included in said lease and such purchaser would be entitled to all of the rights that said B. had under the terms of said lease.

(Syllabus by the court.)

APPEAL from the District Court of Latah County. Honorable E. C. Steele, Judge.

Application to dissolve temporary injunction. Denied. Order affirmed.

The facts are stated in the opinion.

Stewart S. Denning, for Appellant.

The facts alleged necessarily must be alleged positively, not merely on information and belief. Where a verified complaint, instead of an affidavit, is used on motion for an injunction, only the positive allegations and those on information and belief, where the sources of information and the grounds of belief are stated can be taken as true. (*Gaines v. Stroufe,* 117 Fed. 965; *Foster v. Retail Clerks' International Protective Assn.,* 39 Misc. Rep. (N. Y.) 48, 78 N. Y. Supp. 860; 2 Current Law, top p. 444.) An injunction is inoperative until the undertaking required by the statute be given. (*Elliott v. Osbourne,* 1 Cal. 396; *Heyman v. Landers,* 12 Cal. 107; *McCracken v. Harris,* 54 Cal. 81.)

Forney & Moore, for Respondents.

Injunction will issue to restrain temporarily an act which will result in great damage to the plaintiff, although the injury is not irreparable, and notwithstanding that other remedies lie on behalf of the plaintiff. (*Staples et al. v. Rossi,* 7 Idaho, 618, 65 Pac. 67; *Wilson v. Eagleson,* 9 Idaho, 17, 71 Pac. 613; *Gilpin v. Sierra Nev. Con. Min. Co.,* 2 Idaho, 696, 23 Pac. 547, 1014.) An interlocutory injunction is not a matter of strict right. Its issuance rests in the sound discretion of the court, and the exercise of this discretion in granting and refusing the injunction will not, as a general rule, be reviewed on appeal or otherwise controlled or interfered with. (*Washington etc. Ry. Co. v. Coeur d'Alene Ry. etc. Co. et al.,* 2 Idaho, 439, 17 Pac. 142, 4 L. R. A. 409, and cases cited in the opinion of the court

on page 441 [2 Idaho].) Nonjoinder of parties to an action is not in issue on an application for an injunction. (Rev. Stats. 1887, sec. 4113.) There is no nonjoinder of parties. (Rev. Stats. 1887, secs. 4101, 4102.) The court must in every stage of an action disregard any error or defect in the pleading or proceeding which does not affect the substantial rights of the parties (Idaho Rev. Stats., sec. 4231), and may allow a party to amend any pleading or proceeding by correcting any mistake therein. (Idaho Rev. Stats., sec. 4227.) The defendant having filed his answer to plaintiff's complaint, plaintiff was entitled, as a matter of right, to file the affidavit complained of. (Idaho Rev. Stats., sec. 4295; *Thayer et al. v. Bellamy et al.,* 9 Idaho, 1, 71 Pac. 544.)

SULLIVAN, C. J.—This action was brought to restrain the appellant from selling or disposing of certain personal property described in the complaint and for an accounting between the plaintiff and defendant, and for judgment for the value of any and all property unaccounted for by the defendant. Upon the verified complaint, the court ordered the defendant to show cause why an injunction should not issue as prayed for, making the same returnable at Grangeville, Idaho county, on the fifteenth day of September, 1904. And at the same time issued a temporary restraining order against the defendant, his agents and servants, restraining them from selling or transferring any of the said personal property. At that date the cause came on for hearing before the judge upon the rule to show cause why an injunction should not issue. The defendant, who is the appellant here, demurred to the complaint and answered, denying the material allegations of the complaint and moved to discharge the restraining order already issued and objected to the issuance of any injunction in said case. The matter proceeded to a hearing upon the verified complaint and answer of the appellant. On the argument the defendant maintained that no bond had been required before issuing the restraining order and that paragraphs 7, 8 and 10 of the complaint (which embraced all the equities of the bill) were on information and belief, or on belief, and that the sources of information or the grounds of belief were not stated, and that

there was no affidavit in aid of the complaint. Thereupon the court indicated that the motion must be sustained, and the plaintiff then asked for further time to file affidavits in support of the complaint. The court granted such application over the objection of counsel for the appellant. The plaintiff subsequently filed his own affidavit, setting up the sources of information on which he based the allegations of the complaint and the grounds of his belief, and nothing more. The court thereafter took said motion under advisement and denied the same, and directed that the temporary restraining order theretofore issued remain in force upon the plaintiff filing an undertaking to the effect that he would pay the defendant such damages, not exceeding the sum of $600, as he might sustain by reason of said injunction or restraining order, if the court should finally decide that the plaintiff was not entitled thereto. To all of which counsel for appellant then and there excepted. This appeal is from the order denying said motion and continuing the temporary injunction in force. For a clear understanding of this case we will here set forth the main facts out of which this action arose.

It appears from the record that on the twenty-third day of May, 1903, one E. N. Brown was the owner of one hundred and sixty acres of land situated in Latah county, Idaho, and also certain personal property consisting of livestock, both horses, cattle, hogs and farming implements, and that one Clara Brown, a widow, was the owner of one hundred and sixty acres of land situated in said county, and certain personal property. That on the twenty-third day of May, 1903, the said E. N. Brown and Clara Brown, as parties of the first part, and lessors, made and entered into a contract of lease with the appellant Grice, whereby they leased to the said Grice the said real estate together with said personal property for a term of five years, and appellant entered into the possession of said property, real and personal. It appears that on the sixth day of January, 1904, after the appellant had been placed in possession of said premises and personal property, said E. N. Brown sold and conveyed to the plaintiff the one hundred and sixty acres of land and personal property referred to above as belonging to him

included in the said lease. And it is alleged that the appellant at all times had full and complete knowledge of said sale to the respondent. But this is denied by the answer. It is also alleged upon information and belief that the appellant had sold and disposed of a large amount of said described personal property and had converted the proceeds thereof to his own use, and at all times refused, and still refuses, to recognize the plaintiff as the owner of said real estate or said personal property, or any part or portion thereof, and refused to recognize respondent's rights or interest therein, and wholly ignores his rights in the premises; and that respondent had frequently requested the appellant to account to him for said personal property, but that he had at all times refused to do so, and had refused to account to respondent for any part or portion of the proceeds received from the sale of any of said personal property, upon the pretense and excuse that respondent had leased said property of Brown and had no dealings with the respondent; that from the conduct of the appellant and from his statements, he intends to convert to his own use the balance of said personal property, and that said personal property is reasonably worth the sum of $1,500.

With the foregoing statement of facts, we will proceed to dispose of the assigned errors.

Counsel for appellant contends that the legal title to the livestock mentioned in said lease passed to the appellant, and that he did not have to account to the lessors for them or their increase until the termination of the lease, and for that reason said E. N. Brown could not sell the property set forth in said bill of sale. In order to decide this point, resort must be had to the terms of said lease.

From the many provisions of said lease, we only need to quote the following for a decision of this point, to wit: "That the said parties of the first part, in consideration of the covenants and agreements hereinafter specified, do hereby let and lease unto the said party of the second part, . . . . and all the livestock and farm utensils of every name and nature now being in or upon the same and belonging to the said parties of the first part. . . . .

"For the use of said premises, and for the use of all the live-stock, farming machinery and personal property thereon, the said second party hereby covenants and agrees to pay to said first parties an equal one-half share and interest in and to all the increase of livestock, in weight and number of head, now on said premises; that is to say, that the said party of the second part is to have an equal one-half share and interest in and to the increase of said livestock in both weight and numbers, and the said parties of the first part are to have the other equal one-half share and interest in and to the said increase. . . . . .

"It is further agreed by and between the parties herein that in case they fail to and cannot agree upon the terms and price of sale of the increase of said livestock, or any portion thereof, that in that event said parties will agree upon some disinterested person, and that the decision of said disinterested person upon the question submitted shall be binding upon said parties to this lease. . . . . .

"It is further agreed by and between the parties hereto that of the stock now on said premises, ten steer calves are of the value of $10 per head, and that of four yearling steers, two are of the value of $20 per head, and two of the value of $15 per head, the total value of which steer calves and yearling steers shall be returned to said parties of the first part, along with one-half share of the difference between what said steer calves and yearling steers shall sell for and their present value. In this connection it is agreed and understood that said four yearling steers and ten steer calves are excepted from the stock now on said premises, and that are to be returned by said second party to said first parties at the expiration of the said lease. . . . . .

"It is also further agreed that should there be more grain, of any kind or nature, raised on said premises than is necessary to feed the livestock now on and to be on said premises, one-half of said surplus of grain shall be delivered to said parties of the first part on the premises, said first parties furnishing sacks necessary for holding their share of said grain."

It will be noted in the first paragraph above quoted from the lease it is stated that the "first parties let and lease unto the second party," and then follows a description of the real estate,

and after that we find the following provision, to wit: "And all the livestock and farm utensils of every name and nature" mentioned in said lease. And from the second paragraph above quoted, it is stipulated that the appellant, "for the use of said premises and for the use of all the livestock, . . . . agrees to pay to said first parties an equal share and interest in and to all the increase of livestock, etc." And the third paragraph provides as follows: "It is further agreed by and between the parties herein that in the case they fail to and cannot agree to the terms and price of sale of the increase of said livestock," in that event said parties would agree on a disinterested person to decide the difference.

And from the fourth paragraph above quoted it is stipulated that ten steer calves are of the value of $10 per head, and that four yearling steers are worth $20 per head, and two of the value of $15 per head, and that the total value of such calves and yearling steers should be returned to the party of the first part along with one-half of the difference between what said steer calves and yearling steers shall sell for and their present value.

And it is further stipulated that if there is more grain raised on said premises than is necessary to feed said livestock, one-half of the surplus should be delivered to said party of the first part on the premises, said first parties furnishing sacks necessary to hold their share of the grain.

From all of those provisions it is clear that the title to the livestock did not pass to the appellant, and it was not intended that of the increase of said livestock the appellant could sell the same and retain the proceeds thereof until the termination of this lease. But the clear intention was that when any of the increase of said livestock was sold, the share thereof belonging to the lessors must be paid over to them. And at the termination of said lease the lessee should return to the lessors the number, quality and kind of livestock received by him from them.

It would be a most violent construction of the terms of said lease to hold that the lessee could sell the increase of said livestock and retain the lessor's share thereof until the termination of the lease, and we cannot so construe it.

It is contended that it was error to grant a restraining order on a verified complaint where the main allegations were made on information or belief without stating the sources of information or the basis of the belief, and in support of that contention cites *Gains v. Sroufe et al.,* 117 Fed. 965. That was a suit for the infringement of a trademark. The allegations of the bill were upon information and belief, and it is there stated that courts of equity in granting relief by injunction in trademark cases proceed upon the ground of fraud, and it is a general rule that whatever is essential to the rights of the complainant is necessarily within his knowledge and ought to be alleged positively and with precision. That case is not in point here. In the case at bar, some of the allegations are positive and those made upon information and belief, the sources of information and the basis of belief are set forth in the affidavit filed by the respondents in the case, and that is sufficient.

It is contended that the restraining order first issued by the judge was inoperative for the reason that no undertaking was given. That we think is correct, as an undertaking should have been given before the restraining order became operative. However, on the hearing of the order to show cause, the injunction was continued on condition that the respondents file an undertaking in the sum of $600, and, if respondent has not done so, there is no injunction pending. The failure to give a bond at the time the temporary injunction was issued would not prevent the judge or court from granting a temporary injunction on the hearing of the order to show cause.

It is also contended that the demurrer to the complaint should have been sustained. It is sufficient to say that we think the complaint states a cause of action and that there is no misjoinder of parties. The judge did not pass upon the demurrer as he had no authority to do so at chambers. But if the complaint did not in fact state a cause of action, an injunction should not have been issued.

It is contended that the restraining order should have been discharged, for the reason that the answer denied all the equities set forth in the complaint. It is true that under certain authorities where the equities of the complaint or bill are fairly

and squarely denied, a restraining order will not be granted, or if one has been issued, it will not be continued in force. That rule does not necessarily obtain in this state. Section 4288, Revised Statutes, provides *inter alia* that: "An injunction may be granted in the following cases: 1. When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the act complained of either for a limited period or perpetually; 2. When it appears by the complaint or affidavit that the commission or continuance of some act during the litigation would produce waste, great or irreparable injury to the plaintiff; 3. When it appears during the litigation that the defendant is doing, or threatens or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action tending to render the judgment ineffectual." That section does not prohibit the granting of an injunction where the equities of the complaint are all denied by the answer. It is stated in section 1148, 2 Spelling on Injunctions and Extraordinary Remedies, that all of the authorities agree that the granting or dissolving of an injunction, where the facts are in dispute, is within the discretion of the chancellor, nor will the action of the chancellor be reversed unless it is claimed that he has committed an error or abused a sound judicial discretion. It is stated therein as follows: "And where upon the hearing of an order to show cause why a preliminary injunction should not be continued, the plaintiff was allowed by the judge to read new affidavits supporting his complaint, and explaining the affidavits on the part of the defendants, answering the facts set forth in the original application, this was considered to be the exercise of discretion by the judge, which could not be reviewed upon appeal from the order continuing the injunction." And again in section 22 of the last-cited authority it is stated: "The right to a preliminary injunction is generally addressed to the sound discretion of the court, to be exercised according to the circumstances of each case." There is no merit in this contention of counsel.

It is also contended that the injunction should have been denied on the ground that the respondent had a plain, speedy

and adequate remedy at law. It was held by this court in *Staples v. Rossi,* 7 Idaho, 618, 65 Pac. 67, that an "injunction will issue to restrain, temporarily, an act which will result in great damage to the plaintiff, although the injury is not irreparable, and notwithstanding that other remedies lie in behalf of the plaintiff." In *Meyer v. First Nat. Bank, ante,* p. 175, 77 Pac. 334, this court said: "It is true that they had their remedy for damages, but under our statute (Rev. Stats., sec. 4288), a party is not under the necessity of waiting until his property has been damaged and destroyed, and his business disorganized, and his premises encroached upon to the extent of his own ouster, and then resort to an action at law for redress." We think that the correct rule under the provisions of our statute.

It is contended that E. N. Brown and Clara Brown were partners in the lease referred to, and that the purported bill of sale by E. N. Brown to respondent had no connection whatever with the partnership, and that by it Brown did not sell or pretend to sell his interest in the partnership. The record before us does not indicate that E. N. Brown and Clara Brown were partners. It shows that E. N. Brown was the son of Clara Brown; that each owned one hundred and sixty acres of land separate and distinct from each other, and that they each own separately a part of the personal property leased to the appellant.

That being true, there is no question but what E. N. Brown had a right to sell and dispose of the property belonging to him included in said lease, and that the purchaser would be entitled to all of the rights under said lease that Brown had. And for that reason Clara Brown was not a necessary party to this action. For all that appears from the record, the appellant had accounted to her for her entire share of the products and stock sold or disposed of under the terms of said lease.

The respondent is entitled to all of the rights under said lease that E. N. Brown was entitled to thereunder. The order of the court appealed from is sustained.

Costs of this appeal are awarded to respondent.

Stockslager, J., and Ailshie, J., concur.