' (July 13, 1905.)

# WEBER v. DELLA MOUNTAIN MINING COMPANY.

[81 Pac. 931.]

INJUNCTION PENDENTE LITE—CORPORATION RESTRAINED FROM SELLING STOCK ON ASSESSMENT.

1. Complaint and counter-affidavit examined and *held* that they constitute a sufficient showing to warrant the trial judge in exercising his discretion in favor of the granting a temporary injunction pending a determination of the case on its merits.

2. Where the proposed action of a corporation to sell the stock of an insane stockholder for the payment of an assessment is founded upon and instigated by the wrongful acts and conduct of a person who controls a majority of the capital stock, and a part of the stock going to make up such majority was procured by such person from the insane stockholder, and a cause of action for fraud and wrongful conduct is charged against the person so controlling a majority of the stock, a temporary restraining order against the corporation making such sale is incidental to the main action and is a proper relief to be granted in the sound discretion of the court until the case can be heard on its merits.

(Syllabus by the court.)

APPEAL from District Court in and for Blaine County. Honorable Lyttleton Price, Judge.

On return of a rule to show cause, the district judge granted an injunction *pendente lite*. From the order so made the defendants appeal. Affirmed.

Sullivan & Sullivan, for Appellants.

Where "an assignment of the capital stock of a corporation has been made by a board of directors *de jure,* and there is no question as to any irregularity in the levy, or any want of authority on the part of the lawful board to make it, the assessment will be held valid, and an injunction to restrain its collection denied." (*Chandler v. Sheep Rock Min. & Mill Co.,* 15 Utah, 434, 49 Pac. 535.) "Stockholders owning a majority of the stock have a right to combine and secure the election of the board of directors." (2 Cook on Stock and Stockholders and Corporation Law, 3d ed., sec. 622; *Have-*

*meyer v. Havemeyer*, 86 N. Y. 618; *Faulds v. Yates,* 57
Ill. 416, 11 Am. Rep. 24.) ''An officer *de facto* is one who has
the reputation of being the officer he assumes to be, and yet is
not a good officer in point of law.'' (2 Cook on Stock and
Stockholders and Corporation Law, 3d ed., sec. 713, notes.)
To be an officer *de facto* one must be in actual possession of the
officer under claim and color of an election or appointment,
and in the exercise of its functions and discharge of its duties.
(3 Clark & Marshall on Private Corporations, sec. 662.) Offi-
cers *de facto* holding under color of an election, having charge
of the affairs of a company, are capable of finding it in all
matters legitimately devolving upon directors of the company.
(*Mahoney Min. Co. v. Anglo-California Bank,* 104 U. S. 192,
26 L. ed. 707; *Hussey v. Smith,* 99 U. S. 20, 25 L. ed. 314;
Clark & Marshall on Private Corporations, sec. 662, and au-
thorities cited in note; 8 Am. & Eng. Ency. of Law, 778.)
Where the board of directors of a corporation have been nom-
inally elected, organized as a board of directors, and acted as
such, their acts as *de facto* officers in levying an assessment up-
on the subscribed capital stock are valid. (*San Joaquin L. &
W. Co. v. Beecher,* 101 Cal. 70, 33 Pac. 349; *Covington Coal
Creek & J. P. R. Co. v. Moore,* 3 Ind. 510; *Jeffersonville Assn.
v. Fisher,* 7 Ind. 699; *Johnson v. Crawfordsville etc. R. R.
Co.,* 11 Ind. 280; *Steinmetz v. Versailles & O. Turnpike Co.,*
57 Ind. 457; *Atherton v. Sugar Creek & P. Turnpike Co.,* 67
Ind. 334; *Newcastle etc. Turnpike Co. v. Bell,* 8 Blackf. 584;
*Barrell v. Lake View Land Co.,* 122 Cal. 129, 54 Pac. 594;
*Satterlee v. San Francisco,* 23 Cal. 315; *Central Trust Co. v.
Wabash etc. R. Co.,* 23 Fed. 858; *Hughes v. Parker,* 20 N.
H. 58.) In an action by a stockholder of a corporation to
enjoin its consolidation with another corporation, the question
whether its directors are *bona fide* owners of the stock stand-
ing in their names, and therefore authorized to be directors
cannot be tried. (*Langan v. Francklyn,* 29 Abb. N. C. 102,
20 N. Y. Supp. 404; *Raymond v. Spring Grove etc. R. R.
Co.,* 21 Week. Law Bull. 103; *Rice v. Rock Island etc. R. R.
Co.,* 21 Ill. 93; *Ohio etc. R. R. Co. v. McPherson,* 35 Mo. 13,
86 Am. Dec. 128.) A court of equity will not interfere by

injunction in matters relating merely to the internal government of a corporation so as to restrain directors *de facto* from acting as such, on the sole ground of the alleged invalidity of their titles to their offices. (1 Beach on Private Corporations, 319, 320; *Nozley v. Alston,* 1 Phil. 790.) The complaint alleges that the contract between Watt and Rockwell was entered into November 9, 1903, and further alleges that a guardian was appointed of Watt's person and estate on February 13, 1904. This action was not brought until December 27, 1904, and meanwhile the guardian of his person and estate and the plaintiff, Watt's guardian *ad litem,* in this suit, were both cognizant of the fact that the board of directors of the Della Mountain Mining Company were operating and managing said company. They were unaware of many of their acts and even paid the first assessment, though under protest, but then we contend that they allowed the directors to exercise their duties for ten months, without bringing a proper action to remedy any injury being done to the Watt interest, and are thereby estopped from so doing. (*Macon etc. Ry. Co. v. Vason et al.,* 57 Ga. 314; *Raht v. Sevier M. & M. Co.,* 18 Utah, 290, 54 Pac. 889; 2 Pomeroy's Equity Jurisprudence, sec. 965; *Twin-Lick Oil Co. v. Marbury,* 91 U. S. 587, 23 L. ed. 329; *Clay Co. v. Harvey,* 9 Utah, 497, 35 Pac. 510; *Hayward v. National Bank,* 96 U. S. 611, 24 L. ed. 855; *Johnston v. Standard Min. Co.,* 148 U. S. 360, 13 Sup. Ct. Rep. 585, 37 L. ed. 480; *Easterly v. Barber,* 65 N. Y. 252.) If the plaintiff seeks to show mismanagement on the part of Rockwell, as manager of the corporation, we cannot conceive how he can seek to stop an assessment regularly and legally levied by the board of directors of the company to pay a debt which they thought just. Plaintiff might have an action against Rockwell, manager, to account for any breach of trust, but the jurisdiction for that purpose would be over him personally and not over the corporation. (*Neall v. Hill,* 16 Cal. 150, 76 Am. Dec. 508.) It would not be fair to declare that all acts of the board of directors were void, because the by-laws provide who may vote, and if the stock appeared on the books of the company as

belonging to Rockwell, and he was allowed to vote it without any objection, then it would not be right for the party who sold the stock to him to come in with some secret reason why the original sale between himself and Rockwell was void, and thus defeat all the acts of the board of directors. The transfer became at least *prima facie* evidence of who are stockholders and entitled to vote. In some states by statute they are conclusive evidence. (Clark & Marshall on Private Corporations, 1991-1993; *Smith v. Ferries & C. H. Ry. Co.* (Cal.), 51 Pac. 710.)

N. M. Ruick and McFadden & Broadhead, for Respondents.

According to the allegations of the complaint, at the time the transfer of stock took place, November 9, 1903, Watt was insane—"incapable of taking care of himself and mentally incompetent to manage his property or of knowing or realizing the consequences of his acts or of acting intelligently in relation to his business affairs or estate." This allegation is nowhere denied. It follows, therefore, that such sale or transfer was void. (Cook on Stock and Stockholders, sec. 320.) And the purchaser acquired no title whatever. (Cook on Stock and Stockholders, sec. 427.) Upon the hearing counsel for defendants challenged the proposition that the contract of a lunatic is void. We maintain, however, that persons of unsound mind are incapable of making contracts. (Idaho Civ. Code, secs. 2735, 1987; Cal. Civ. Code, secs. 33, 1550.) A sale of personal property executed by an insane person is void, even as to an innocent purchaser. (*Harris v. Harris,* 64 Cal. 108, 28 Pac. 63.) The facts set forth in the affidavit of Rockwell constitute the transaction one of agency and all authorities agree that the power of attorney of a lunatic is void. (*Dexter v. Hall,* 15 Wall. 9, 28 L. ed. 73.) A corporation is bound absolutely to know of the lunacy of a transferrer (of stock), even though it allows a registry of his ordinary signature and transfer. The granting c refusing to grant an interlocutory injunction rests in the sound discretion of the court. "The granting, refusing or continuing an interlocutory injunction rests in the sound

judicial discretion of the inferior court, and the appellate court will only correct an abuse of such discretion.'' (High on Injunction, sec. 1696; Spelling on Injunction, secs. 1031-1148; *Heinze v. Boston etc. M. Co.*, 30 Mont. 484, 77 Pac. 421; *Parrott etc. Co. v. Heinze*, 24 Mont. 485, 87 Am. St. Rep. 386, 64 Pac. 326, and cases cited, 53 L. R. A. 491.)

AILSHIE, J.—This is an appeal from an order granting an injunction *pendente lite*. The contention made is that the complaint does not state facts sufficient to warrant the issuance of an injunction pending the final determination of the case. The only papers before the court at the time he passed upon the application were the complaint, demurrer to the complaint and the affidavit of the defendant Rockwell. Since the sufficiency or insufficiency of the showing made is with reference to the insanity of plaintiff's ward, and a certain transaction which appears to have taken place between the ward and the defendant Rockwell, on or about the month of November, 1903, it will be necessary to a complete understanding of the case that we quote at some length from the pleadings and affidavit. The plaintiff alleges the insanity of his ward, W. H. Watt, and the appointment of a guardian of his person and estate, and also the appointment of the plaintiff Weber as guardian *ad litem*. He then alleges that the Della Mountain Mining Company is a corporation organized and existing under the laws of this state with a capital stock of one hundred thousand shares, and that on or about the ninth day of November, 1903, Watt was the owner of fifty-eight thousand nine hundred and ninety shares of the capital stock of this corporation, and on that date Watt entered into an agreement with the defendant Rockwell whereby he agreed to sell his entire holdings in the corporation for the sum of $54,000, $9,000 of which was paid in cash, and that the balance was to be paid in installments of $9,000 each every succeeding six months thereafter, and that upon the payment of the first $9,000 Watt delivered to Rockwell ten thousand shares of the capital stock of the Della Mountain Mining Company. It is further alleged that

after making the first payment and securing the first ten thousand shares of stock that Rockwell failed, neglected and refused to make the further payments as provided for in the contract. Paragraphs 6, 7, 10 and 11 of the complaint are as follows:

"6. Plaintiff further alleges that on the date on which said contract and agreement was executed, to wit, on or about the ninth day of November, 1903; the said Watt was incapable of taking care of himself and mentally incompetent to manage his property, or of knowing or realizing the consequence of his acts or of acting intelligently in relation to his business affairs or estate, and never thereafter ratified, confirmed or in any manner approved the same.

"7. That subsequent to the date of said agreement and after said Rockwell had acquired the said ten thousand (10,000) shares of stock thereunder, he, the said Rockwell, combined his holdings of stock with those of sundry other stockholders in said mining company, particularly with the shares of stock held and owned by one Thomas Brennan, on which he had secured an option and authority to vote the same, and the stock of one Samuel Allen, thereby securing the control or ownership of a majority of the shares of stock in said Della Mountain Mining Company and the control of the operations and management of said company."

"10. That after said defendant Rockwell secured control of said mines and the operation thereof, as and in the manner hereinbefore stated, he secured himself to be appointed manager of said mines at a salary of two hundred and fifty ($250) dollars per month, to be paid by said Della Mountain Mining Company, and procured one F. B. Cross, an employee of said Rockwell, to be employed as superintendent at a salary of one hundred and fifty ($150) dollars per month, to be paid by said company, and otherwise to largely increase and multiply the cost and expense of operating said mine, while at the same time not taking, or endeavoring to take, sufficient ore from the said mines to meet the cost of operating the same and to pay the increased salaries and expenses made necessary by the employment aforesaid and the

increased expenditures of operation under the management
of said Rockwell whereby a debt was created, which indebted-
ness was sought to be met by levying of assessments upon
the capital stock of said Della Mountain Mining Company as
hereinafter stated.

"11. That heretofore, to wit, on or about the —— day of
June, 1904, the said defendant Rockwell, being in control of
said Della Mountain Mining Company and of a majority of
the stock therein and of the operation of the mines of said
company hereinbefore referred to, caused the board of di-
rectors of said company to levy an assessment upon said cap-
ital stock; the share or portion payable out of the estate of
Watt, said incompetent person, amounting to four thousand
nine hundred dollars and upward, which assessment was paid
out of said estate under protest, and again on or about the
fifth day of November, 1904, procured another assessment to
be levied upon the capital stock of said company of ten cents
a share, which assessment amounted to four thousand nine
hundred dollars and upward upon the stock in said company
belonging to the estate of said Watt, which last-named assess-
ment has not yet been paid, and the said Della Mountain
Mining Company and the officers thereof, instigated thereto
by said defendant Rockwell, threatened to sell four thousand
nine hundred fourteen (4,914) shares of the capital stock of
said mining company belonging to the estate of said Watt,
to pay the said last-mentioned assessment, and unless re-
strained by an order of this court, will sell the same, or so
much thereof as may be necessary to produce the sum of four
thousand nine hundred fourteen dollars ($4,914), at public
auction at the office of said company, with Rockwell & Com-
pany, bankers, Hailey, Idaho, on the twenty-eighth day of
December, 1904, at 2 o'clock in the afternoon."

The only counter-showing made by the defendants consists
of the affidavit of Rockwell, which is as follows:

"Ervin E. Rockwell, being first duly sworn, deposes and
says: That he is one of the defendants in the above-entitled
action; that during the months of June, July and August,
1903, he negotiated with said W. H. Watt for the sale of all

said Watt's interest in the Della Mountain Mining Company, and subsequently thereto, to wit, on the eighteenth day of September, 1903, the said Watt entered into an agreement with this affiant; whereby said Watt agreed to sell this affiant sixty thousand shares of stock in the said Della Mountain Mining Company, which said stock was deposited in escrow in the Watt Banking Company, Limited, of Hailey, Idaho, with instructions to deliver the same to said Rockwell, or his assigns, upon his or their depositing in said bank the sum of $9,000 on or before November 11, 1903, and upon his executing and depositing in said bank his five promissory notes in favor of said Watt for $9,000 each, payable each succeeding six months thereafter; that it was understood by and between said Watt and this affiant that this affiant was to try to sell said stock to parties in the east, and was to receive a commission of ten per cent on all stock sold; that this affiant, in the month of June, 1903, following conversations which he had with said Watt for the sale of said Watt's interest in the Della Mountain Mining Company, went so far as to have the mines belonging to said company examined by one John F. Boyle, a mining expert, on behalf of prospective purchasers; that thereafter, to wit, on or about the fifth day of November, 1903, said Watt, Vivian F. Watt, his wife, now guardian, Peter Weber, guardian *ad litem* in the above-entitled suit, and their attorneys, McFadden & Brodhead, requested him to change the escrow holder from said bank to one George A. McLeod, and to secure the payment of said five promissory notes by depositing with said McLeod the certificates of stock representing said stock, all of which this affiant agreed to and did do, and the escrow agreement mentioned in paragraph 5 of plaintiff's complaint is the one made according to the change requested as aforesaid; that pursuant to said understanding this affiant had with said Watt as aforesaid, he sold, prior to said fifth day of November, 1903, the ten thousand shares of stock, which were to be delivered upon the first payment of $9,000 as aforesaid, to one W. C. Thorne, and on said fifth day of November, 1903, said Thorne paid to said McLeod the $9,000 due on or be-

fore November 11, 1903, and the said Watt, his said wife, said Weber, and their said attorneys, then and there accepted and received from said McLeod the said $9,000, and said Thorne then and there became the owner of said ten thousand shares of stock, and the same were transferred from said Watt to said Thorne, as shown by the books of said company, all of which said Watt, his said wife, said Weber, and their said attorneys well knew.

"That this affiant, at the commencement of this action, was and now is the owner and holder of five thousand two hundred and eighty shares of stock in said company, and it is impossible to state or ascertain what portion of said five thousand two hundred and eighty shares was included in said ten thousand shares of stock; that never, at any time, did the holdings of this affiant, together with the holdings of Thomas Brennan and Samuel Allen, in said company, amount to a majority of the capital stock of said company.

"That this affiant is not insolvent, and has other interests and property in this county and state, and is able to respond in damages."

After the hearing of this matter, the district judge filed a written opinion setting forth his views of the case and his reasons for granting the injunction, and from that opinion it appears that the court was more largely influenced by the nature and character of the affidavit filed by Rockwell than by the allegations of the complaint. After discussing at some length the question as to whether or not under the authorities in this country the deed of a lunatic or insane person is absolutely void or voidable only, he concludes that it is unnecessary to pass upon that phase of the case on the application before him, and thereupon proceeds to what he considers the vital and decisive question in the case, and upon that point we quote from his opinion as follows:

"But the defendant Rockwell files an affidavit in which he avers that he purchased none of the stock from Watt. That he commenced negotiating for all of Watt's stock in the corporation—amounting to about sixty thousand shares—in June, 1903, and continued the negotiations until September

of that year, when the negotiation was concluded by Watt's placing all his shares in the hands of an agent to be delivered to Rockwell, or assigns, upon the making of a payment of $9,000 in cash on or before November 11th of that year, and the execution and delivery to Watt's agent of Rockwell's five promissory notes of $9,000 each, payable to Watt each succeeding six months thereafter. The affidavit proceeds: 'That it was understood by and between said Watt and this affiant that this affiant was to try to sell stock to parties in the east, and was to receive a commission of ten per cent on all stock sold.'

"In confirmation of this, the affidavit states further that 'following conversation which he had with said Watt, . . . . affiant went so far as to have the mines belonging to said company examined by . . . . a mining expert on behalf of prospective purchasers.' The affiant proceeds: 'That thereafter, to wit, on or about the fifth day of November, 1903 [The date of the transaction being stated in the complaint on the 9th of November], said Watt [and others appearing to be acting in his interest] requested him [affiant] to change the escrow holder . . . . to one George A. McLeod, and to secure the payment of the said five notes by depositing the stock of said McLeod, all of which affiant agreed to do and did do, and the escrow agreement mentioned in paragraph 5 of the complaint is the one made according to the change requested as aforesaid; that pursuant to said understanding this affiant had with said Watt as aforesaid he sold, prior to the said fifth day of November, 1904, the ten thousand shares of stock which were to be delivered upon the first payment of $9,000, as aforesaid, to one W. C. Thorne, and on the said fifth day of November, 1903, said Thorne paid to said McLeod the $9,000 due on or before November 11, 1903, and said Watt (and the others mentioned) then and there accepted and received from said McLeod the said $9,000, and said Thorne then and there became the owner of said ten thousand shares, etc.' "

The affidavit states further that Rockwell was at the commencement of this suit, and is now, the owner of five thou-

sand two hundred and eighty shares of the stock, and that it is impossible to state or ascertain what portion of said five thousand two hundred and eighty shares was included in the ten thousand shares sold to Thorne; that never at any time did the holdings of affiant, together with the holdings of Brennan and Allen, amount to a majority of the capital stock of the corporation.

"The matter set up affirmatively in this affidavit is new, and it must be considered as of the same effect upon the contention here as if affirmatively alleged in an answer.

"The meaning of it is that the transaction as originally conceived and finally put into formal agreement was not a sale of the shares from Watt to Rockwell at all; taking the affidavit as true, it was an employment of Rockwell by Watt as his factor to sell the stock on commission. It would appear that notwithstanding the giving of the promissory notes, which would, on the face of the transaction, show it to be an absolute sale, the seller taking $9,000 in cash and $45,000 in notes in payment for the stock—the placing of the notes and the stock in the hands of a middleman whom they called the 'escrow' was merely for convenience of the factor in getting possession of the stock for delivery to his buyer when he should find him, and making a fixed and specific place where payments would be made and delivery could be had. Just what was to be done with the five promissory notes in case of default in payment does not appear, nor does it appear why they were executed and put up with the stock at all (it not being an out-and-out sale to Rockwell), unless some further convenience not disclosed at the hearing. It must be presumed, of course, that if the stock was not taken up within the stipulated periods, the notes, representing no value or consideration, would probably be returned to the maker. At all events they would not be enforceable.

"It appears then that Watt made no sale, but created, or attempted to create, two agencies: one in Rockwell to sell stock for him, under which he acted and sold the shares in controversy to Thorne; and another in McLeod, who acted and accepted payment from and delivered the shares to

Thorne. Thorne is not a party to this action. It does not appear how much of this block of stock is still in his hands; but it is to be inferred from the affidavit that some part of it is included in the five thousand two hundred and eighty shares now held by Rockwell, though the affidavit discloses that it cannot be ascertained how much is included, and it states no fact as to how it was acquired by Rockwell from which the court could ascertain it.

"This record discloses that the number of shares of the corporation is a hundred thousand, and that Watt owned fifty-eight thousand nine hundred and ninety. This would leave but forty-one thousand outstanding against him. The only thing presented in the record tending to contravene the allegation that Rockwell used the ten thousand shares to unite or combine with the other stockholders, and thus secured the control of the corporation, is the statement in the affidavit that he owns only five thousand two hundred and eighty shares, and that they, with the holdings of Brennan and Allen, did not amount to a majority of all the shares. It is manifest, however, that at least nine thousand shares of it were essential to make up the majority, because Watt retained forty-eight thousand nine hundred and ninety, or only one thousand shares less than half the entire amount issued. It is impossible that the control could be changed in any other way; and it must be considered that whether Rockwell and Thorne, or any other person, used it to build up a majority, it was this particular stock in controversy (or at least nine-tenths of it) which changed the control.

"The affirmative new matter in the affidavit presents a very different case from that presented in the complaint, as far as the ancillary relief sought against the Della Mountain corporation is concerned.

"Whatever the true rule may be in regard to the character of deeds of sale of persons mentally incompetent, there is no conflict of authority upon the question of nullity of their deeds which purport to delegate authority, but convey no interest. The power of attorney of a lunatic is void. This was the case of *Dexter v. Hall,* 15 Wall. 9, 21 L. ed. 76, above

referred to, and in the consideration of that case by other courts discussing the character of a lunatic's deed, no criticism of the rule there announced is ventured. On the contrary, wherever that case has been discussed by other courts, the rule has been affirmed, and the distinction drawn.''

It will be seen from the opinion of the district judge that he regarded the contract set up by Rockwell's affidavit as one merely constituting Rockwell the agent or factor of Watt, and that the real sale of the stock did not take place until the date on which the ten thousand shares were transferred, which appears to have been on or about the fifth day of November, 1903. Rockwell's affidavit in this respect is somewhat ambiguous and uncertain, but we think the view taken of it by the district court is justified by its terms. Appellant lays great stress upon the fact that it is alleged in the complaint that the transaction took place on or about the ninth day of November, 1903, and that Watt's insanity is alleged on that date, while it is shown by Rockwell's affidavit that the transaction between him and Watt took place prior to the fifth day of November, and that consequently there is no sufficient showing as to Watt's insanity, and therefore no fact to justify the action of the court. It should be borne in mind that both the complaint of the plaintiff and the affidavit of Rockwell purport to set forth the facts with reference to one and the same transaction. By paragraph 6 of plaintiff's complaint it is alleged: ''That on the date on which said contract and agreement was executed, to wit, on or about the ninth day of November, 1903, the said Watt was incapable of taking care of himself and mentally incompetent,'' etc. By this allegation the date of Watt's insanity is fixed as existing at the time the agreement was entered into and the date of that agreement is alleged to have been ''on or about the ninth day of November.'' The date of Watt's insanity and his want of capacity, although meager and open to some objections, we think sufficiently alleged to set in action the discretion of a chancellor and for the purposes of sustaining a temporary restraining order.

It is contended, however, by the appellants that the showing is not sufficient to justify the order against the Della Mountain Mining Company restraining its officers from selling sufficient of Watt's stock to pay the $4,914 assessment. It appears from the allegations of the complaint and the nature of the relief it seeks to obtain that the restraining order against the corporation is rather an incident to the main action against Rockwell, and of course a failure to sustain the allegations of the complaint against Rockwell would upon a final hearing defeat the plaintiff's right to any relief against the corporation. On the other hand, it would appear that if the plaintiff can establish all of the allegations of the complaint as to Rockwell, then, he would be in the position of still suffering both great and irreparable injury if he should be denied this incidental relief against the corporation. It should not be overlooked that this complaint alleges that Rockwell by reason of this deal secured control of a majority of the stock of the corporation and control and management of the corporation, and that he caused and procured these different assessments to be made. The appellants argue at length and quite exhaustively their various grounds of demurrer, and point out with considerable reason and force some specific grounds on which a demurrer should be sustained to the complaint. But these specific grounds of demurrer are not matters that we are called upon to consider on this appeal. The district judge at chambers had no authority to hear and pass upon the demurrer. (*Price v. Grice,* 10 Idaho, 443, 79 Pac. 387.) Of course if the complaint had entirely failed to state a cause of action, the judge would not have been authorized to issue an injunction thereon. These grounds of demurrer will be considered by the court when he comes to settling the issues in the case, and upon them we express no opinion here.

This court has uniformly held that "a large discretion is vested in the trial court in the granting of temporary injunctions to hold the property in *statu quo* pending a determination of the action and its exercise will not be reversed on appeal unless a clear abuse is shown." (*Shields v. Johnson,*

10 Idaho; 454, 79 Pac. 394; *Price v. Grice,* 10 Iowa, 443, 79 Pac. 387; *Gilpin v. Sierra Nevada Con. Min. Co.,* 2 Idaho, 709, 23 Pac. 547; *Staples v. Rossi,* 7 Idaho, 618, 65 Pac. 67; *Wilson v. Eagleson,* 9 Idaho, 17, 108 Am. St. Rep. 110, 71 Pac. 613; *Meyer v. First Nat. Bank,* 10 Idaho, 175, 77 Pac. 334.)

After a careful examination and review of the entire record, we are not prepared to say that the trial judge has abused the discretion vested in him, and we must therefore affirm the order.   Costs awarded to respondent.

Stockslager, C. J., concurs.