403 P.2d 580

**RURAL ELECTRIC CO., a non-profit cooperative corporation, Plaintiff-Appellant,**

**v.**

**CITY OF BURLEY, Idaho, a municipal corporation, Defendant-Respondent.**

**No. 9504.**

Supreme Court of Idaho.

June 25, 1965.

Rehearing Denied July 19, 1965.

Duffin & Duff, Rupert, Rigby & Thatcher, Rexburg, for plaintiff-appellant.

Herman E. Bedke, Burley, for defendant-respondent.

SMITH, Justice.

Plaintiff (appellant) is herein sometimes referred to as Rural Electric, and defendant (respondent) as the City.

This appeal arises out of a controversy concerning whether plaintiff Rural Electric or defendant City may provide electric service to two certain users of electricity.

Plaintiff is a non-profit cooperative corporation organized under the laws of the State of Idaho, and is in the business of distributing electric energy to its members within Minidoka County.

The City of Burley is a municipal corporation situate in Cassia and Minidoka Counties and, included in its various functions as a municipality, is engaged in the business of distribution of electric energy.

Rural Electric brought this action seeking an injunction permanently restraining the City from providing electric service to two parcels of real property, separated some 440 feet, situate within the corporate boundaries of the City, in the area referred to as North Burley, in Minidoka County. One property is owned by American Oil Company, and the other by W. W. Paulson. Rural Electric maintains that the City is "pirating" customers previously served by Rural Electric, in violation of I.C. §§ 61–332, 61–333 and 61–334.

The sections of Idaho Code under consideration read:

"61–332. Electric utility extending service—Prohibition when person or locality already served.—No public utility and no cooperative association organized for the purpose of furnishing electric service to its members or consumers only, shall extend or render electric service directly or indirectly to the premises of any person already receiving electric service directly or indirectly from another public utility or another such cooperative association, or to a service location which has been previously served by a public utility or cooperative association; provided, that nothing contained herein shall preclude any public utility or any cooperative association from extending electric service to its own property or facilities or to another such cooperative association for resale; and, provided further, that any concumer (consumer) who feels aggrieved with his present electrical service may apply to the district court, of the county of his residence, for an order to show cause why the consumer should not be released from his present supplier, and if the said district court should find that service is inadequate and will not likely be made adequate or that the rates are unreasonable and will not

likely be made reasonable, the court shall order such release."

"61–333. Extension of service prohibited when already available within certain distance.—No public utility, municipal corporation, or quasi municipal corporation, and no cooperative association organized for the purpose of furnishing electric service to its members or consumers only, shall hereafter construct any electric service line to serve any consumer where the property to be served is already receiving electric service from another source or previously served by another agency, provided that nothing shall preclude any public utility, municipal corporation, quasi municipal corporation or cooperative association from extending electric service to its own property or facilities; nor shall a public utility, municipal corporation, quasi municipal corporation or cooperative association hereafter construct any electric service line to serve any customer or consumer where the property to be served is within one thousand (1,000) feet of existing central station service, electric lines or lines of another public utility, municipal corporation, quasi municipal corporation or cooperative association; provided, however, that in the event two (2) existing lines are within the said one thousand (1,000) feet of a new consumer, the public utility, municipal corporation, quasi municipal corporation or cooperative association whose line is nearest the said new consumer shall serve the same."

"61–334. Injunctive relief for service extension violations.—Application on proper complaint may be made for an injunction in the district court for violation of section(s) 61–332 and 61–333. If the matter cannot be heard upon its merits immediately, the said district court shall issue a preliminary injunction, after a proper undertaking being furnished by the complaining party; if, after a trial upon the merits, sufficient cause appears therefor, the preliminary injunction shall be made permanent."

After a hearing, the trial court refused injunctive relief to Rural Electric on the grounds:

1, that as the controversy pertains to the American Oil Company tract, I.C. § 61–333 is inoperative in that it is so vague, ambiguous and uncertain as to be unenforceable.

2, that as the controversy pertain to the Paulson tract, I.C. § 61–333 does not apply to defendant City in that it did not construct or extend the lines on the Paulson property as contemplated by I.C. § 61–333; and that I.C. § 61–332 does not prohibit a municipality from

rendering electric service to an existing customer of a cooperative in the business of distributing electric energy to its members.

The court thereupon entered judgment, rescinding a restraining order theretofore issued; adjudging that Rural Electric was not entitled to injunctive relief and dismissing its complaint with prejudice. Rural Electric perfected an appeal from the judgment.

Several of plaintiff's assignments assert error committed by the trial court in failing to make certain findings relating to electric service installations upon, and extensions thereof in proximity of electric lines of the parties to the "property to be served" as "consumers," or "new consumers," all of which we have duly considered. However, we do not deem the issues raised by those assignments as controlling of this appeal.

Plaintiff's remaining assignments raise the issue as to whether the trial court erred in refusing injunctive relief to plaintiff under the law and the evidence, and in dismissing its complaint with prejudice; and in concluding that as the controversy pertains to the American Oil Company tract, I.C. § 61–333 is inoperative because it is so vague, ambiguous and uncertain as to be unenforceable. The issues raised by those assignments will dispose of the appeal. *American Oil Company Issue.*

Prior to September, 1963, the American Oil Company property had not been served with electric energy. At a prior time Rural Electric had served a residence situate upon homesteaded farm land from which the American Oil tract was taken; and at the time of the hearing of this cause a Rural Electric service pole was situate upon and near the west boundary of such tract.

The City's present power pickup for the American Oil tract is situate in the southwest corner of the tract; it is a "temporary" pole which the City installed in September, 1963, nearer to the City's power line than to that of Rural Electric, although the service pole of Rural Electric was nearer the Oil Company's service station being constructed on the land at the time of the hearing herein, than is the service pole of the City.

When American Oil Company commenced construction of its service station it applied to and received the electric service of the City. The Oil Company has never applied for or received the electric service of Rural Electric.

In approaching the issue whether I.C. § 61–333 is sufficiently definite and certain, in support of Rural Electric's position, to justify injunctive relief, we re-quote a

portion of I.C. § 61–332, enacted by the 1957 legislature, as follows:

"No public utility and no cooperative association organized for the purpose of furnishing electric service to its members or consumers only, shall extend or render electric service directly or indirectly to the premises of any person already receiving electric service [from another utility] * * * or to a service location which has been previously served by [another] utility."

That section of the statute is inapplicable to municipal corporations. Unity Light & Power Company v. City of Burley, 83 Idaho 285, 361 P.2d 788 (1961). Rural Electric nevertheless contends in effect that the type of conduct prohibited by I.C. § 61–332, when perpetrated by a municipal corporation is prohibited by I.C. § 61–333. A comparison of the two sections of the statute reveals that I.C. § 61–332 prohibits the extension or rendition of electric service to another's customer; whereas I.C. § 61–333, as amended by the 1963 legislature, provides that "No * * * municipal corporation * * * shall hereafter construct any electric service line to serve any customer [served by another] * * *;" and prohibits a municipal corporation from "* * construct[ing]· any electric service line to serve any customer [where neither have been served] * * * within one thousand (1,000) feet of existing central station service, electric lines * * * of another * * *."

A type of conduct by a municipal corporation prohibited by I.C. § 61–333 is the construction of an electric line to serve any customer of another. The record shows, however, that the City did not construct any line to serve American Oil Company as an existing customer of Rural Electric; hence it is not guilty of such prohibitive type of conduct.

Both utilities however, at the time of the hearing herein, had power lines within 1,000 feet of the property of American Oil Company when it requested electric service of the City. In such a situation I.C. § 61–333 provides that " * * * [the utility] whose line is nearest the said new consumer shall serve the same." In that regard the trial court found that "the point of [the City's] pickup established at the direction of American Oil Co. is * * * nearer the City poles than the Plaintiff's pole, although Plaintiff's pole is on the tract and nearer the building [service station] * * being constructed thereon." In disposing of this phase of the appeal we cannot improve upon the learned trial judge's reasoning and ruling which we here adopt as follows:

"The question is where is the 'new customer'. Is he everywhere on the property? Is he where the building is situated? What if there is.·more

than one building? The section is silent.

"While it is true that a Court must try to save a statute not destroy it, (State ex rel. Wright v. Headrick, 65 Idaho 148, 155 [, 139 P.2d 761, 763] (1943)), a statute must be sufficiently definite to enable the court to place thereon a reasonable construction and declare the legislative intent. Id., p. 156 [139 P.2d 761]. To find a statute void and unenforceable a situation must exist where:

" ' * * * uncertainty is inherent in the enactment itself, resulting from inconsistencies or ambiguities or indefiniteness in the language used, so as to make it impossible to determine and effectuate the legislative intent.' Beatty v. City of Sante Fe, [57 N.M. 759] 263 P.2d 697, 700 (N.M.1953).

A statute cannot be enforced where:

" ' (it is) * * so ambiguous, indefinite, and contradictory in its terms as to make impossible its intelligent administration * *.' State Board of Technical Registration v McDaniel, [84 Ariz. 223] 326 P.2d 348, 352 (Ariz.1958).

"It is my belief that the provisions of 61–333, I.C., pertaining to customers not previously served by anyone (either where one utility has lines within 1000 feet or where both have the lines) is too vague and uncertain to enforce. To decide how we locate the customer under the myriad possibilities in different cases would be for the Court to legislate and this we are prohibited from doing."

*The Paulson Issue:*

One G. M. McClintock developed land in the area known as North Burley, and he together with others requested the City to, and it did, annex the property. In the meantime he built a lumber yard, and a sales building known as the Temtrol Building, and secured from Rural Electric two service outlets for electricity, one to the lumber yard, and the other to the Temtrol Building. This took place in 1959.

In 1960 the City constructed electric lines to serve the Temtrol Building and provided service to the building until it became vacant during May, 1963, at which time the City disconnected its service but left its installation intact.

In May, 1963, Paulson commenced some new construction of the lumber yard building to connect it with the Temtrol Building so as to combine the two buildings for one business, and requested Rural Electric to remove its lines from the Paulson buildings. Paulson at the same time commenced construction of a skating rink on the tract, at the rear and in a northeasterly direction

from those buildings, and requested electric service from the City for the rink. The City thereupon set a service pole upon Paulson's property at a point designated by Paulson, to provide electric service for the rink. The point of delivery of electric service to the new pole, from the electric lines in the weather head at the west end of the Temtrol Building was equidistant to the then service lines of Rural Electric, but closer to the City line, if measured from the line extending from the service pole installed near the southeast corner of the lumber yard, to the weather head.

Paulson then disconnected Rural Electric's electric service installations to both buildings, as Rural Electric had refused to do so, and caused the installation of a line extending from the weather head at the west end of the Temtrol Building to the City's newly installed service pole at the north; and by a meter placed on that pole caused the City's electric service to be connected and electric energy to be delivered to his properties. Paulson thus combined at one outlet the electric power to his new skating rink and his connected lumber yard building and Temtrol Building. Before construction of the skating rink he had received power at two outlets.

As heretofore pointed out, I.C. § 61–332, enacted by the 1957 legislature, is inapplicable to the City, a municipal corporation; and the record is devoid of any showing that the City extended its lines to service the customer of another; nor did the City construct new lines to serve the customer of another, as prohibited by I.C. § 61–333, as amended by the 1963 legislature. Hence the trial court was correct in its denial of injunctive relief to Rural Electric.

As to the Paulson property, all installations as such on Paulson's property were made by Paulson and belonged to him. The City made only the physical connection of its meter to Paulson's installation, in the rendition of the service.

In final disposition of this appeal we deem Unity Light & Power Company v. City of Burley, 83 Idaho 285, 290, 361 P.2d 788, 790 (1961), as controlling. Therein it is stated:

"* * * The granting or refusing of injunctive relief rests in the sound discretion of the court. I.C. sec. 8–402; Price v. Grice, 10 Idaho 443, 79 P. 387; Harriman v. Woodall, 31 Idaho 750, 176 P. 565; White v. Coeur d'Alene Big Creek Min. Co., 56 Idaho 282, 55 P.2d 720; Rowland v. Kellogg Power & Water Co., 40 Idaho 216, 233 P. 869. The exercise of such discretion by the trial court in granting or refusing a temporary injunction will not be reversed on appeal unless a clear abuse of discretion is shown. Shields v. Johnson, 10 Idaho 454, 79 P. 394; Weber v. Della Mountain Min. Co.,

11 Idaho 264, 81 P. 931. See also dissent, Gilbert v. Elder, 65 Idaho 383, 390, 144 P.2d 194."

The record does not support plaintiff's claim of threatened irreparable injury, nor abuse of discretion by the trial court.

The judgment is affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, TAYLOR and KNUDSON, JJ., concur.