Points Decided.

(February 29, 1908.)

PETER WEBER, Guardian ad Litem of W. H. WATT, an
Incompetent Person, Respondent, v. DELLA MOUN-
TAIN MINING COMPANY, a Corporation, and IRVIN
E. ROCKWELL, Appellants.

[94 Pac. 441.]

COMPLAINT AGAINST CORPORATION—SUFFICIENCY OF COMPLAINT—LEVY-
ING AND COLLECTING ASSESSMENT BY BOARD OF DIRECTORS—NECES-
SITY FOR ASSESSMENT—RIGHT OF STOCKHOLDERS TO COMBINE
STOCK FOR ELECTION OF OFFICERS—WRONGFUL ACTION OF BOARD
OF TRUSTEES—COMPETENCY OF NONEXPERT WITNESS ON QUESTION
OF SANITY OF CONTRACTING PARTY—RIGHT OF ADVERSE PARTY TO
EXPLAIN AFFIDAVITS INTRODUCED AGAINST HIM.

1. In an action commenced against a corporation and a third
party as codefendants, alleging that the latter purchased stock in
the defendant corporation from plaintiff at a time when he was
of unsound mind and incompetent to transact business, and that
the sale was void, and praying an injunction against the mining
company restraining it from collecting an assessment levied by
its board of directors subsequent to the void transfer of stock,
it is essential that the plaintiff should plead and prove some
facts from which it would appear that but for the sale and transfer
of such stock the assessment would not have been made, and that
the purchaser of the stock wrongfully, fraudulently or unlaw-
fully procured control of the company and its board of trustees,
or wrongfully or unlawfully secured the election of a new board
of trustees, and that the assessment would not have been made had
it not been for such transfer of stock, in order to state a cause
of action against the mining company and to entitle the plaintiff
to an injunction against the company restraining the collection
of such assessment. A complaint which does not state such facts
is obnoxious to a demurrer.

2. It is lawful and legitimate for a stockholder in a corpora-
tion to combine his holdings with the holdings of one or more
other stockholders for the purpose of the election of directors
and officers and controlling the management of the corporation.

3. The necessity for making and levying an assessment on the
capital stock of a corporation within itself, and separately and
independently of any wrongful or unlawful acts on the part of the
board of directors, cannot be questioned by a stockholder.

4. The evidence of a layman or nonexpert witness is equally as competent and admissible as the evidence of an expert witness on the question of the sanity of a person or his incompetency to transact business at any given time or in any given manner.

5. A layman or nonexpert witness may be as able and competent as an expert to make clear mental comparisons between the acts and conduct of a man who was at one time sane, sound and competent, and at another time incompetent or laboring under mental disability or partial or total insanity.

6. In a case where the gist of the action is the sanity or competency of a person to transact business at a given time, it is error to exclude the evidence, opinions and statements of witnesses who were acquainted with the alleged insane person for many years, and who were familiar with his actions and conduct, and who saw him at the time of the transaction in question.

7. In the trial of an action where one party introduces an affidavit made by his adversary upon a prior date and occasion, it is error on the part of the court to refuse to allow the party litigant who made the affidavit to explain what he meant by statements contained therein and the circumstances and conditions under which it was made, or any other facts or circumstances which would tend to explain or elucidate the contents of the affidavit or the conditions and circumstances under which it was made.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District for the County of Blaine. Hon. Lyttleton Price, Judge.

Action by the plaintiff as guardian *ad litem* of W. H. Watt, an incompetent person, to obtain a decree declaring a certain sale and transfer of stock void and to procure an injunction against the corporation restraining it from collecting an assessment on such stock until after the return of the stock. Judgment for the plaintiff and defendants appeal. *Reversed.*

Sullivan & Sullivan, for Appellants.

Plaintiff had no standing in court whatever, under the complaint filed, as courts never interfere with the internal management of corporations unless there is fraud, gross negligence or acts *ultra vires.* (Cook on Stock & Stockh., sec. 643.)

The discretion of the directors or majority of the stockholders, as to acts *intra vires,* cannot be questioned by the courts, unless fraud is involved.    (Cook on Stock & Stockh., secs. 676, 677; 26 Enc. Law, 963; High on Injunctions, sec. 1186.)

Equity will not interfere on mere questions of corporate management or policy.    (10 Cyc. 969; High on Injunctions, sec. 1210; Clark & Marshall Corp., secs. 627, 628.)

Courts will not interfere with the business policy of a corporation.    (26 Am. & Eng. Enc. 959, n. 5.)    Stockholders cannot control directors in the exercise of their judgment. (Clark & Marshall Corp., sec. 694.)

Majority entitled to control against minority.    (26 Am. & Eng. Enc. Law, 960; Clark & Marshall Corp., sec. 628; *Gamble v. Queen Co. Water Co.,* 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 530.)

Stockholders cannot question the necessity of making an assessment.    (10 Cyc. 487; *Budd v. Multnomah St. Ry. Co.,* 15 Or. 413, 15 Pac. 659; *Oglesby v. Attrill,* 105 U. S. 605, 26 L. ed. 1186; *Chouteau Ins. Co. v. Floyd,* 74 Mo. 286; Cook on Stock & Stockh. & Corp. Law, par. 113.)

The court erred in granting an injunction against the defendant company and restraining it from collecting the assessment, as the board of directors may proceed to collect by assessment the legally incurred debts as prescribed by Title 4, Civil Code.    (*Sparks v. Lower Payette Ditch Co.,* 3 Ida. 306, 29 Pac. 134; *Santa Cruz R. R. Co. v. Spreckles,* 65 Cal. 193, 3 Pac. 661, 802; *Chandler v. Sheep Rock etc. Min. & Mill Co.,* 15 Utah, 434, 49 Pac. 535.)

"Stockholders owning a majority of the stock have a right to combine and secure the election of the board of directors." (Cook on Stock & Stockh. and Corp. Law, 3d ed., par. 622; *Faulds v. Yates,* 57 Ill. 416, 11 Am. Rep. 24; *Havemeyer v. Havemeyer,* 86 N. Y. 618.)

Mere mental weakness will not authorize a court of equity to set aside an executed contract, if such weakness does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence.

(*Pickerell v. Morss*, 97 Ill. 220; *Lindsey v. Lindsey*, 50 Ill. 79, 99 Am. Dec. 489; *Willemin v. Dunn*, 93 Ill. 516; *Ratliff v. Baltzer's Admr.*, 13 Ida. 152, 89 Pac. 71; 16 Enc. Law, 624.)

A grantor who has mental capacity sufficient to understand ordinary business transactions at the time of the *factum*, and understands the motive and effect of the deed which he makes, knows what property he is conveying and to whom it is being conveyed, is competent to make such deed. (*Kelly v. Perrault*, 5 Ida. 221, 48 Pac. 45; *Curtis v. Kirkpatrick*, 9 Ida. 629, 75 Pac. 760.)

"The mental capacity to be considered is that which exists at the time of the execution of the deed." (*Francis v. Wilkinson*, 147 Ill. 370, 35 N. E. 150; *Heirs of Clark v. Ellis*, 9 Or. 128.)

The court erred in not permitting Rockwell to explain certain statements in his affidavit. Such admissions are open to rebuttal or explanation, or they may be controlled by higher evidence. This is true even though they are made under oath. (1 Jones' Law of Ev., sec. 298; 1 Enc. of Ev., 476.)

The court erred in refusing to allow witnesses who were present at the execution of contracts to testify as to Watt's competency. (*Heirs of Clark v. Ellis*, 9 Or. 128; *In re Christensen's Estate*, 17 Utah, 42, 70 Am. St. Rep. 794, 53 Pac. 1003, 41 L. R. A. 504; *People v. Wreden*, 59 Cal. 394.)

"Upon the question whether a disease had reached such a stage at a given time that the subject of it was incapable of making a will or contract, or was irresponsible for his acts, the opinion of his neighbors, men of good, common sense, is of more value than that of medical experts." (*Rutherford v. Morris*, 77 Ill. 397.)

N. M. Ruick, and McFadden & Brodhead, for Respondent, cite no authorities on points decided.

AILSHIE, C. J.—This action was commenced by the plaintiff, Peter Weber, as guardian *ad litem* of W. H. Watt, an incompetent, against the Della Mountain Mining Company,

a corporation, and Irvin E. Rockwell as defendants. The complaint alleged plaintiff's appointment as guardian *ad litem* and that prior to the commencement of the action the probate court of Blaine county had duly and regularly adjudged Watt incapable of taking care of himself and managing his estate, and the appointment of one Vivian F. Watt as guardian of his person and estate. It is then alleged that on or about the 9th day of November, 1903, Watt was the owner of the controlling interest in the Della Mountain Mining Company, a corporation, owning and controlling 58,990 shares of the capital stock of that corporation. That "on said date he entered into an agreement in writing with Rockwell whereby the said Watt agreed to sell and deliver to the said Rockwell all of said shares of mining stock, together with 1,000 shares belonging to one Samuel Allen, in consideration of the payment to him, said Watt, of the sum of $54,000 therefor." That it was stipulated by the terms of said agreement that upon the payment of $9,000 at the date of the agreement, 10,000 shares of stock should be transferred and delivered to Rockwell, and that upon the payment of $9,000 each succeeding six months thereafter, the further amount of 10,000 shares of the capital stock of the corporation should be delivered to Rockwell until the entire $54,000 should be paid, and the full amount of 58,990 shares of stock should be delivered. Plaintiff alleged that the first payment of $9,000 was made and the first 10,000 shares of stock was accordingly delivered to Rockwell. Paragraphs 6 and 7 of the complaint are as follows:

"Plaintiff further alleges that on the date on which said contract and agreement was executed, to wit, on or about the 5th day of November, 1903, the said Watt was incapable of taking care of himself and mentally incompetent to manage his property or of knowing or realizing the consequences of his acts or of acting intelligently in relation to his business affairs or estate and never thereafter ratified, confirmed or in any manner approved the same.

"That subsequent to the date of said agreement and after said Rockwell had acquired the said 10,000 shares of stock thereunder, he, the said Rockwell, combined his holdings

of stock with those of sundry other stockholders in said mining company, particularly with the shares of stock held and owned by one Thomas Brennan, on which he had secured an option and authority to vote the same, and the stock of one Samuel Allen, thereby securing the control or ownership of a majority of the shares of stock in said Della Mountain Mining Company and the control of the operations and management of said company.''

Following these allegations, the complaint alleges that the mines had previously been operated by Watt at a great profit and without the necessity of levying assessments, but that immediately after this transaction and after the majority control of the corporation passed from the hands of Watt, the mines had been operated at a loss, and that one assessment had already been made by the directors of the corporation and paid by Watt, and that they were threatening to make further assessments, and ''that after said defendant Rockwell secured control of said mines and the operation thereof, as and in the manner hereinbefore stated, he secured himself to be appointed manager of said mines at a salary of $250 per month to be paid by said Della Mountain Mining Company, and procured one F. B. Cross, an employee of said Rockwell, to be employed as superintendent at a salary of $150 per month, to be paid by said company, and otherwise to largely increase and multiply the cost and expense of operating said mines, while at the same time not taking, or endeavoring to take, sufficient ore from the said mines to meet the cost of operating the same,'' etc.

It appears from the allegations of the complaint that upon receiving the first 10,000 shares of stock, Rockwell, together with the other stockholders, aside from Watt, held the controlling interest in the corporation, and if they voted their stock together could elect the directors and control the corporation. The plaintiff sought to have the contract between Watt and Rockwell decreed to be absolutely void and annulled and the stock returned to Watt and to have the collection of the assessment levied by the directors of the Della Mountain Mining Company enjoined and restrained. On filing the

complaint a temporary injunction was issued against the corporation restraining its board of directors from proceeding with the sale of stock for the collection of the assessment. The company moved for a dissolution of the injunction and the motion was denied and the order was continued in force *pendente lite*. The defendants appealed from the order to this court, and, after an examination and consideration of the matter, the order of the trial court was affirmed. (*Weber v. Della Mountain Mining Co.,* 11 Ida. 264, 81 Pac. 931.) After the decision of this court on the injunction, the case came on in the trial court for the settlement of issues, and the defendants filed separate demurrers presenting numerous grounds on which they charged that the complaint was insufficient and defective. The court overruled the demurrers and the ruling is assigned as error here.

The complaint is clearly insufficient as against a special demurrer in so far as it purports to state a cause of action against the Della Mountain Mining Company. On the former appeal from the injunction order, we held that it was sufficient on which to rest a temporary injunction pending further proceedings in the case, and at the same time refrained from expressing any opinion as to the merits of the demurrer which had been filed against it. The relief sought against the mining corporation is incidental to the main issue. It is sought to restrain the sale of the stock for the collection of the assessment. In order, however, to sustain the action against the company, and restrain it from proceeding to collect the assessment duly and regularly made by its board of directors, it is essential to state more definitely and with greater certainty than this complaint contains a cause of action against the company, or some unlawful, fraudulent or improper relation existing between its officers and the principal defendant, Rockwell. It would be necessary to in some way show by the complaint and the proofs that the assessment would never have been levied against the stock had it not been for the void transfer of this stock to Rockwell, and that Rockwell in some unlawful and wrongful manner controlled or influenced the board of directors to take this action

which they otherwise would not have taken, or show that by reason of obtaining this stock he secured a change in the board of directors in a wrongful or unlawful manner, and following upon such action he also secured them to wrongfully or unlawfully levy this assessment. In other words, unless the plaintiff can show that this assessment has been made wrongfully and unlawfully and as a result of the wrongful or fraudulent action of Rockwell, there would be no reason or justification for prosecuting an action for injunction against the company. The mere fact that Rockwell combined his holdings with other stockholders and by that combination was able to elect officers, would furnish no reason for vacating or avoiding the action of such officers, or for enjoining the company from carrying out the resolutions of its board of directors. As we understand it, it is lawful and legitimate for one stockholder to combine his holdings with the holdings of one or more other stockholders for the purpose of the election of officers and controlling the management and business affairs of a corporation, and this is true until such time as the action of such stockholders becomes wrongful or unlawful or fraudulent, at which point the courts may take jurisdiction and act for the protection of the minority. Cook on Corporations (5th ed.), at sec. 622a, says: "It is elementary law that stockholders owning a majority of the stock have a right to combine and control the election of the board of directors." To the same effect see *Havemeyer v. Havemeyer*, 43 N. Y. Sup. Ct. 506, affirmed 86 N. Y. 618; *Faulds v. Yates*, 57 Ill. 416, 11 Am. Rep. 24; *Beitman v. Steiner Bros.*, 98 Ala. 241, 13 South. 87; *Ziegler v. Lake St. El. R. Co.*, 69 Fed. 176.

It is likewise true that the necessity for an assessment on the capital stock of the corporation cannot be questioned by a stockholder. (10 Cyc. 487; *Budd v. Multnomah St. R. Co.*, 15 Or. 413, 3 Am. St. Rep. 169, 15 Pac. 659.) In this case the plaintiff does not show that any change took place in the officers of the corporation subsequent to the transfer of the stock to Rockwell or on account thereof; nor does it show that any election of directors has ever taken place since that time, nor does it show that they have been under the control, in-

fluence and direction of Rockwell, or that they have been wrongfully or improperly influenced by him; nor does it show any facts from which it may be fairly inferred that the assessment would not have been made just the same even though the transfer of stock to Rockwell had never taken place; nor does it show that Watt would not have been obliged to pay this same assessment if he had still held the stock just the same as he is called upon to do at this time. For the foregoing reasons, we are satisfied that the court erred in overruling the demurrer of the Della Mountain Mining Company.

As to the sufficiency of the complaint as against Rockwell, a different question arises. While the complaint is, as we said on the former appeal, "meager and open to some objections," still we are inclined to hold that it was sufficient for the purpose of charging that the transfer of the stock from Watt to Rockwell was void on the ground that Watt was insane at the time of making the alleged contract. As to whether that agreement was a contract of sale or of agency, we express no opinion here, for the reason that, as we view this case, the judgment must be reversed as to both defendants, and a new trial be granted, and since some of the evidence offered was improperly rejected, a somewhat different state of facts may be shown on the next trial. Touching the question as to the degree or extent of incompetency or mental unsoundness on the part of the contracting party for or on account of which the contract may be avoided, we announced the rule to be followed in this state in the case of *Ratliff v. Baltzer's Admr.*, 13 Ida. 152, 89 Pac. 71. Should another trial take place, however, it will be necessary to determine whether the real contract was entered into on September 18th, or November 5th. All the evidence is before us on that question. The two agreements are in the record and all the circumstances under which they were made and executed are presented. The only changes whatever made by the agreement of November 5th were as follows: First. Under the agreement of September 18th, Rockwell was to make a payment of $9,000 at the time he received the first 10,000 shares of stock, and executed his promissory notes for $9,000 each

in payment of the balance of the purchase price, and apparently, from the terms of the agreement, was to receive the balance of the shares of stock on delivery of the promissory notes.    By the second agreement, the $9,000 in cash was to be paid on the delivery of the 10,000 shares of stock, and the remainder of the stock was to be held by the holder of the escrow and a certificate of 10,000 shares of stock was to be delivered as often as a $9,000 payment should be made.    The other change in the agreement was merely that of the holder of the escrow or depositary.    Under the first agreement, the stock and agreement were deposited with the Watt Banking Company.    Under the second agreement, the deposit was made with George A. McLeod.    It will be seen from these facts that the real and substantial contract between the parties was entered into September 18th, and that the subsequent agreement of November 5th was merely a change of depositary or escrow-holder, with a further proviso for additional security and collateral in favor of Watt as guaranty for the payment of the purchase price.

On the trial of the case the main question of fact which arose was as to the mental competency of Watt at the time of making and entering into these agreements or contracts.    The plaintiff introduced a number of witnesses who testified as to Watt's mental condition at the time these transactions were had and at various times prior and subsequent thereto.    On the part of defendants, the defendant Rockwell, L. L. Sullivan and F. B. Cross were called, and it was shown in substance by each of them that they had known Watt continuously for a number of years, and that they were acquainted with him during the times mentioned by the witnesses of the plaintiff, and that they were present at the time of these transactions and were familiar with his demeanor and conduct.    They were thereupon asked if, judging from his acts and conduct, and all that they observed in other respects, they believed Watt to be mentally competent, sound and sane at the time of these several transactions.    The court refused to allow any of these witnesses to answer the questions.    These rulings are assigned as error.    It is too well settled law to require consideration

or discussion here that the competency or incompetency, sanity or insanity of a person at the time of a given transaction may be proven by laymen or nonexpert witnesses with equal certainty and often greater satisfaction than by experts, and the fact that a witness who has been acquainted with the person and has seen him frequently and has been familiar with all his transactions, and has had business dealings with him, is himself not an expert on the subject of insanity, and is not versed in the medical science or has had no training or education along those lines, is no reason whatever for excluding his evidence on a question of common, everyday observation. (*Kelly v. Perrault,* 5 Ida. 221, 48 Pac. 45; *Heirs of Clark v. Ellis,* 9 Or. 128; *In re Christensen's Estate,* 17 Utah, 42, 70 Am. St. Rep. 794, 53 Pac. 1003, 41 L. R. A. 504; *People v. Wreden,* 59 Cal. 394; *Armstrong v. State,* 30 Fla. 200, 11 South. 618, 17 L. R. A. 484.) A nonexpert may be as able as an expert to make clear mental comparisons between the acts and conduct of a man who was at a given time sane, sound and perfectly competent, and his acts at a time when he was laboring under mental disabilities.

It was error for the court to refuse to allow these witnesses to answer the questions and testify and give their opinions as to the sanity or insanity of Watt and of his mental condition at the times in question.

Aside from the action of the court in overruling the mining company's demurrer, the most serious and the gravest error committed in this case, perhaps, was the ruling of the court in refusing to allow Rockwell to explain the affidavit that was introduced by the plaintiff against him. When the action was first instituted in the lower court, and after the issuance of the temporary restraining order, Rockwell filed an affidavit which was considered on the application for an order dissolving the injunction. That affidavit is set out in full in the previous decision. (*Weber v. Della Mountain Min. Co.,* 11 Ida. 264, 81 Pac. 931.) After the plaintiff had introduced his evidence in the trial court, the defendants moved for a nonsuit, and it seems that the court intimated that the motion was well taken, whereupon the plaintiff moved to reopen

the case and his motion was granted, and he thereupon introduced in evidence this affidavit made by Rockwell and used on his application for a dissolution of the injunction. This affidavit appears to have been introduced on the theory that it established the relation of principal and agent between Watt and Rockwell, and that it showed the contract of September 18th to be one of agency rather than one of sale. After the introduction of this affidavit, Rockwell was called and asked to explain the affidavit,—what was meant by it, the different transactions to which it referred, the conditions under which it was made, etc. The court sustained an objection to the offer and refused to permit Rockwell to testify in respect thereto. This was a gross error, and is within itself abundantly sufficient to reverse the judgment in this case. The affidavit was clearly admissible on behalf of the plaintiff, and any explanation that the defendant had to make of its contents was equally admissible on behalf of the defendant. (1 Ency. of Evidence, 476; 1 Jones on Evidence, sec. 298.)

Our consideration of the sufficiency of the complaint as against the Della Mountain Mining Company disposes of the assignments of error with reference to the findings of fact made by the court, and renders it unnecessary for us to consider them further. We have considered all the questions presented in this record that are likely to arise on another trial of the case. The judgment must be reversed, and it is so ordered. The cause is remanded to the trial court with direction to sustain the demurrer by the Della Mountain Mining Company, and take such further action as may be proper and in harmony with the views herein expressed. Costs awarded in favor of appellant.

Stewart, J., concurs.

Sullivan, J., sat at the hearing, but took no part in the decision.