(April 22, 1922.)

(District Court No. 3337.)

THOMAS M. ROBERTSON, Appellant, v. FIRST NA-
TIONAL BANK OF TWIN FALLS, a Corporation,
and H. W. COWLING, Respondents.

(District Court No. 3377.)

THOMAS M. ROBERTSON, Appellant, v. FIRST NA-
TIONAL BANK OF TWIN FALLS, a Corporation,
and A. L. HOUGHTELIN, and H. W. COWLING,
Respondents.

(District Court No. 3443.)

H. W. COWLING, Respondent, v. TWIN FALLS HOTEL
COMPANY, a Corporation, and THOMAS M. ROB-
ERTSON, Secretary, Appellants.

[206 Pac. 689.]

CORPORATIONS—POOLING AGREEMENT — SALE OF STOCK — CONTROL BY
MAJORITY—HONESTY AND GOOD FAITH.
    1.  A combination of the holders of a majority of the stock of
a corporation to control the corporation is not necessarily unlaw-
ful.
    2.  A pooling agreement providing that the holders of a major-
ity of the stock in the pool may determine at what price and

Publisher's Note.
    1.  Validity of stock-voting agreements, see notes in 56 **Am.
St.** 138; 14 Ann. Cas. 938; Ann. Cas. 1918E, 252; 15 **L. R. A.** 683;
31 **L. R. A., N. S.,** 1186.

upon what terms all the stock in the pool shall be sold does not permit a member of the pool to acquire a majority of such pooled stock and force a sale to himself of all the stock in the pool at less than its reasonable value and against the wishes of the owner of a minority of such pooled stock.

3. In a pooling contract such as is involved in these actions the members of the pool owe to one another the duty of acting honestly and in good faith in carrying out the terms of such contract.

APPEAL from the District Court of the Fourth Judicial District, for Twin Falls County. Hon. H. F. Ensign, Judge.

No. 3337—*Affirmed.* Nos. 3377 and 3443—*Reversed.*

Jas. R. Bothwell, W. Orr Chapman and Richards & Haga, for Appellants.

The so-called pooling agreement is against public policy, in that its actuating and stated purpose is to acquire control of the corporation. (7 R. C. L., sec. 362; *Wheeler v. Abilene Nat. Bank Bldg. Co.,* 159 Fed. 391, 89 C. C. A. 477; 14 Ann. Cas. 917, and note, 16 L. R. A., N. S., 892; *Koehler v. St. Mary's Brewing Co.,* 228 Pa. St. 648, 139 Am. St. 1024, 77 Atl. 1016.)

In disposing of corporate assets majority stockholders are in the position of trustees, whose sales to themselves, even though fair, are voidable at the election of the *cestuis que trustent.* (7 R. C. L., sec. 286; *Mason v. Pewabic Min. Co.,* 133 U. S. 50, 10 Sup. Ct. 224, 33 L. ed. 524; *Chicago Hansom Cab Co. v. Yerkes,* 141 Ill. 320, 33 Am. St. 315, 30 N. E. 667.)

In making sales of corporate property by exercising their power to control the affairs of the corporation, the majority stockholders must act in the interest of all of the stockholders. (7 R. C. L., sec. 287; *Wheeler v. Abilene Nat. Bank Bldg. Co.,* 159 Fed. 391, 14 Ann. Cas. 917, 89 C. C. A. 477, 16 L. R. A., N. S., 892; *Sparrow v. E. Bennett & Sons,* 142 Mich. 441, 105 N. W. 881, 10 L. R. A., N. S., 725.)

A voting agreement, where the arrangement is made for the sole benefit of the parties to the agreement and not for the general welfare of the corporation and all of its stockholders, is ordinarily held invalid. (7 R. C. L., secs. 329–331; *Clarke v. Central. R. R. & Bkg. Co. of Georgia,* 50 Fed. 338, 15 L. R. A. 683; *Morel v. Hoge,* 130 Ga. 625, 14 Ann. Cas. 935, 61 S. E. 487, 16 L. R. A., N. S., 1136; *Gage v. Fisher,* 5 N. D. 297, 65 N. W. 809, 31 L. R. A. 557.)

It seems that an agreement to pool stock and vote it as a unit for a certain length of time, without power to withdraw from the agreement, and without any consideration in connection with the purchase of the stock, falls within the prohibition of the law, as being against public policy. (1 Thompson on Corporations, secs. 898–904, incl.; 3 Fletcher's Cyc. Corp., sec. 1711; 14 C. J., sec. 1422.)

Specific performance will not lie to compel transfer of the stock under the agreement. (*Gage v. Fisher,* 5 N. D. 297, 65 N. W. 809, 31 L. R. A. 557; 3 Fletcher's Cyc. Corp., sec. 7321; *Ryan v. McLane,* 91 Md. 175, 80 Am. St. 438, 46 Atl. 340, 50 L. R. A. 501.)

Walters, Hodgin & Bailey and R. P. Parry, for Respondents.

The "pool" agreement is not void as against public policy. (10 Cyc. 341; *Smith v. San Francisco etc. Ry. Co.,* 115 Cal. 584, 56 Am. St. 119, 47 Pac. 582, 35 L. R. A. 309; *Boyer v. Nesbitt,* 227 Pa. St. 398, 136 Am. St. 890, 76 Atl. 103; *Windsor v. Commonwealth Coal Co.,* 63 Wash. 62, 114 Pac. 908, 33 L. R. A., N. S., 63; *Clark v. Foster,* 98 Wash. 241, 167 Pac. 908; *Bowditch v. Jackson Co.,* 76 N. H. 351, Ann. Cas. 1913A, 366, 82 Atl. 1014, L. R. A. 1917A, 1174; *Thompson v. J. D. Thompson Carnation Co.,* 279 Ill. 54, Ann. Cas. 1917E, 591, 116 N. E. 648; *Ramsey v. W. M. Welch Co.,* 163 Iowa, 324, 144 N. W. 323; *Brightman v. Bates,* 175 Mass. 105, 55 N. E. 809; *Weber v. Della Mountain Min. Co.,* 14 Ida. 404, 94 Pac. 441; *Hey v. Dolphin,* 92 Hun, 230, 36 N. Y. Supp. 627; *Faulds v. Yates,* 57 Ill. 416, 11 Am. Rep. 24; *Borland v. Prindle etc. Co.,* 144 Fed. 713; *Havemeyer v.*

*Havemeyer,* 43 N. Y. Super. Ct. 506; *Williams v. Montgomery,* 148 N. Y. 519, 43 N. E. 57; note, 16 L. R. A., N. S., 1140, and cases cited.)

The "pool" agreement is supported by a sufficient consideration. (*Carnagie Trust Co. v. Security Life Ins. Co.,* 111 Va. 1, 21 Ann. Cas. 1287, 68 S. E. 412, 31 L. R. A., N. S., 1186; *American Agricultural Chemical Co. v. Kennedy etc.,* 103 Va. 171, 48 S. E. 868; *Smith v. San Francisco etc. R. Co.,* 115 Cal. 584, 56 Am. St. 119, 47 Pac. 582, 35 L. R. A. 309; *Warren v. Pim,* 66 N. J. Eq. 353, 59 Atl. 773.)

Whether or not specific performance of the "pool" agreement would lie is no test of its validity in this action. (Pomeroy, 3d ed., par. 1401; 25 R. C. L. 206.)

After the "pool" agreement was made and the stock deposited in escrow, the members thereof could not withdraw their stock. (16 Cyc. 569, 570; *McDonald v. Huff,* 77 Cal. 279, 19 Pac. 499; *Doran v. Bunker Hill etc. Min. Co.,* 23 Cal. App. 644, 139 Pac. 93; *Fitzgerald v. Allen,* 240 Ill. 80, 88 N. E. 240; *Gammon v. Bunnell,* 22 Utah, 421, 64 Pac. 958; *Tharaldson v. Everts,* 87 Minn. 168, 91 N. W. 467; *Gaston v. City of Portland,* 16 Or. 255, 19 Pac. 127.)

A bill in equity will lie to compel the transfer of stock on the books of the corporation. (6 Fletcher on Corporations, 6387; *Ellsworth v. National Home & Town Bldrs.,* 33 Cal. App. 1, 164 Pac. 14.)

DUNN, J.—The three actions above mentioned were consolidated for trial in the district court of Twin Falls county and are brought here on appeal under a stipulation of the parties that the three actions shall be heard and determined in this court on the record made in the consolidated trial. All of these actions grow out of the following contract:

"WHEREAS, The TWIN FALLS HOTEL COMPANY is a corporation organized and existing under and by virtue of the laws of the State of Idaho, and having its principal office and place of business in the City of Twin Falls, County of Twin Falls, State of Idaho, and having a capital stock of

one thousand shares of the par value of one hundred dollars each, and of which said capital stock there is now outstanding six hundred and fifteen shares of the par value of $61,500, and of which issued and outstanding stock the following named persons of Twin Falls, Idaho, are the owners and holders of the number of shares set opposite their respective names, as follows, to wit:

W. A. Babcock......................37.5 shares
A. B. Colwell........................37.5 shares
R. M. Spargur.......................37.5 shares
A. L. Houghtelin....................60.   shares
George Herriott ....................82.5 shares

Total.................255   shares and

"Whereas, It is the purpose and desire of the above named stockholders to purchase or obtain control of enough additional shares to give the above named stockholders the control of the corporation, to the end that the property belonging to the said corporation may be sold for a price not less than $125,000 or that the control of the corporation may be sold upon a basis of not less than the above named price, and

"Whereas, It is the desire of the said W. A. Babcock, A. B. Colwell, R. M. Spargur and George Herriott to make a deal with the said A. L. Houghtelin to the end that he purchase enough additional shares to give the above named persons the control, now, therefore, in evidence of such understanding,

"This Agreement, Made and entered into this 21st day of June, A. D. 1919, by and between the said W. A. Babcock, A. B. Colwell, R. M. Spargur and George Herriott, the parties of the first part, and A. L. Houghtelin, the party of the second part, Witnesseth:

"1. That the said party of the second part is hereby authorized and directed to advance the money and purchase enough shares of the above named corporation, not to exceed 82.5 shares, which, added to the said 255 shares above named will give the control of said corporation to the persons above

named, at such price as the said A. L. Houghtelin may find necessary, not to exceed one hundred and fifty dollars per share.

"Upon the purchase of said additional shares, the said . A. L. Houghtelin shall be entitled to the additional shares so purchased at par, and the balance of the purchase price over and above par (which shall hereinafter be designated as the premium), together with interest on the same at ten per cent per annum from date of purchase until paid, shall be repaid to the said A. L. Houghtelin, by assessing each share of stock in said pool equally, said pool to be composed of the 255 shares above named .and the additional stock purchased as aforesaid, and it is further agreed that a lien shall attach to the stock in said pool for the repayment of the premium so paid and the interest thereon.

"It is agreed that any portion of the stock in said pool may be released from said lien by the payment of its portion of the premium and interest assessed against the same to the time of such payment, at any time the owner and holder may desire.

"2. It is agreed between each of the persons above named, to and with each and all of the other persons named, that the 255 shares of stock above mentioned shall be assigned in blank and placed with First National Bank of Twin Falls in escrow to be held under the terms of this agreement, as trustee, to carry out the terms thereof (the name of such trustee to be filled in later), and the additional stock purchased to give control shall also be assigned in blank by the said A. L. Houghtelin and placed with the above named trustee to become a part of said pool, to accomplish the purpose above mentioned.

"3. It is agreed that if the property of said corporation or the stock ·in said pool is not sold within six months from the date of this agreement, then the premium and interest above mentioned shall become due and payable to the said A. L. Houghtelin, and this pooling agreement terminated, provided, however, that no stock in said pool shall be released from the possession of the trustee until the premium

and interest assessed against it shall be paid to the said A. L. Houghtelin or the trustee for him.

"4. It is agreed that if the said A. L. Houghtelin shall not be able to purchase such additional stock at the price of one hundred and fifty dollars per share, or less, then, if he shall obtain authority by mail or wire from the said Babcock, Colwell, Spargur and Herriott to purchase any definite number of shares for a definite price greater than said price of one hundred and fifty dollars per share, such greater price shall be paid and such authority shall become a part of this agreement.

"5. It is agreed that a majority of the stock composing said pool, when formed, shall have the power to determine at what price and upon what terms said property or said stock composing said pool shall be sold, provided that said property shall not be sold for less than $125,000 or said stock be sold for less than upon a basis of $125,000 for said property.

"6. The consideration for this agreement is as shown by the premises and the sum of one dollar, lawful money of the United States of America, paid by each of the persons above mentioned to each of the other persons so mentioned herein, the receipt of which is hereby acknowledged.

"7. If the said Houghtelin shall not be able, within a period of sixty days from the date of this agreement, to purchase such additional stock, then the expense of making a trip to eastern holders of stock to obtain the same, in a sum not to exceed two hundred dollars, shall be assessed equally against each share of stock in said pool containing 255 shares.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

> "GEORGE HERRIOTT.  (Seal)
> "W. A. BABCOCK.  (Seal)
> "R. M. SPARGUR.  (Seal)
> "A. B. COLWELL.  (Seal)
> "A. L. HOUGHTELIN.  (Seal)"

On June 28, 1919, just one week after said contract was entered into, Houghtelin obtained from John Little 82½ shares of stock in the hotel company and placed the same in the First National Bank of Twin Falls in the pool with the 255 shares of stock specified in the contract. This raised the stock in the pool to 337½ shares and gave the members of the pool control of the corporation, there being only 615 shares of stock outstanding.

After said pooling contract was made between the parties thereto and the stock certificates placed in the First National Bank appellant Robertson purchased the 75 shares of stock which A. B. Colwell and R. M. Spargur had placed in said pool and on October 1, 1919, demanded of said bank that it deliver to him stock certificates Nos. 9 and 10 representing said 75 shares of stock in said hotel company, which demand the bank refused. Thereupon Robertson brought the first action above mentioned to compel the bank to deliver to him said stock certificates and to recover $500 damages. On October 25, Robertson brought the second action above mentioned alleging his ownership of the 75 shares of stock represented by said certificates 9 and 10; his demand upon said bank for the delivery of said certificates and its refusal thereof; and that said pooling agreement "is void and unenforceable on account of being against public policy, uncertain, lack of mutuality, and the stock referred to therein as belonging to said A. B. Colwell and R. M. Spargur has, prior to any action on the part of said defendant, First National Bank of Twin Falls, been disposed of to this plaintiff." In addition thereto the complaint contained the following allegations:

## "IX.

"Plaintiff is informed and believes, and therefore, alleges that the defendant A. L. Houghtelin, has, since the making of said agreement, acquired more than a majority of the stock referred to in said agreement, namely: the stock then listed in the name and belonging to the said A. L. Houghtelin, together with the stock of one George Herriott, being

82½ shares thereof as in said agreement referred to; also 82½ shares of the stock of said corporation purchased from eastern parties as referred to in said agreement. . . . .

## "XI.

"Plaintiff is informed and believes, and therefore, alleges, that the said defendant, A. L. Houghtelin, as owner and in control of a majority of the stock referred to in said agreement, will forthwith proceed and require that the stock referred to in said agreement as belonging to the said A. B. Colwell and R. M. Spargur, be transferred to one other than this plaintiff, 'or that the property of said corporation be sold for the sum of $125,000, or that the said stock referred to in said agreement as the property of the said A. B. Colwell and R. M. Spargur, be sold to one other than this plaintiff on a basis of not less than $125,000 for said property, all of which will deprive this plaintiff of his said property, namely, 75 shares of the stock of the Twin Falls Hotel Company, a corporation organized and existing under the laws of the state of Idaho, which said property cannot again be purchased by this plaintiff on the open market, and will give the said defendant, A. L. Houghtelin and those to whom he may sell or deliver said stock an unfair advantage against this plaintiff as a minority stockholder of said corporation, which unfair advantage, among other things, will include a right of the said defendant, A. L. Houghtelin, to control the affairs of said corporation and to sell the property of said corporation for the sum of $125,000, which is less than the actual value thereof, and that the action and the authority of the said defendant, A. L. Houghtelin to act in the premises will cause this plaintiff great and irreparable injury, and that plaintiff has no relief therefrom by plain, speedy or adequate remedy at law."

Appellant prayed that defendants be restrained from selling or transferring said 75 shares of stock to any other person than himself and that said pooling agreement be declared null and void as to said certificates Nos. 9 and 10; and that upon the final determination of the action said 75

shares of stock be decreed to be the property. of appellant free and clear of all claims by respondents, or either of them.

The allegations of paragraphs IX and XI, *supra,* were admitted by Cowling and Houghtelin by failure to deny them.

Before the trial said stock certificates with all the other certificates in the pool, were delivered to Cowling and were presented to appellant Robertson as secretary for transfer on the books of the hotel company. He refused to transfer Nos. 9 and 10, and the third action was brought to compel him as secretary to transfer said stock to Cowling.

In the first two actions judgment went against Robertson and in the third against Robertson and the Hotel Company, from which judgments appeals have been taken.

While the contract specifies the sale of the hotel property as one of its purposes, no question involving such sale is involved in any of the appeals. Appellants assail the pooling contract on several grounds and assign numerous errors of the trial court. We think a consideration of only a very few of the points urged will be necessary in deciding these appeals.

We find nothing in the pooling contract to support the contention of appellant that it is void as against public policy. Upon the face of the contract it seems to us that nothing appears to prevent applying to it the principle as to combinations of stockholders laid down by this court in *Weber v. Della Mountain Mining Co. et al.,* 14 Ida. 404, 411, 94 Pac. 441.

It is claimed by appellant Robertson that at any time before a sale of the stock embraced in the pool he had a right to withdraw the shares purchased by him from Colwell and Spargur. He admits that he purchased this stock subject to the provisions of said pooling contract and with full knowledge of all of its terms. He thus became bound by said contract. Assuming, but not deciding, that he might withdraw his stock at any time before a sale was made under said contract, he certainly had no right to withdraw it

except upon paying the amount of the lien with which his stock was charged.  He had assented to the provision that Houghtelin should be reimbursed for such outlay as he made in the purchase of stock for the pool to the extent of the premium paid by him and that such premium should be a lien upon all the stock in the pool.   There is no claim that Houghtelin had not made this expenditure in good faith and if appellant had a right to withdraw his stock he could do so only by paying his proportion of such premium.

On October 5, 1919, Cowling made an offer of $150 per share for the 337½ shares of hotel stock embraced in the pool and on October 29th, William A. Babcock, A. L. Houghtelin and George Herriott accepted said offer.   While Herriott signed this acceptance it appears from the record that at that time Houghtelin was owner of the Herriott stock. This gave Houghtelin 225 of the 337½ shares of the stock in the pool, which was sufficient to enable him to control the sale of all of the stock embraced in the pool according to the pooling contract.   The record shows from the testimony of Cowling and Houghtelin that Cowling had no financial interest in the purchase of the stock.   Houghtelin furnished the money and testified that Cowling was acting for him in making the purchase.   It thus appears that Houghtelin as purchaser fixed the price that he was willing to pay for the stock in the pool, submitted his proposition to himself as owner of a majority of the stock in the pool and as such majority owner voted to accept his own proposition, which, if the transaction can be upheld, transferred to himself, against Robertson's wishes, the ownership of the stock of appellant Robertson for a price which appellant claims and the evidence shows to be much less than the actual value of the stock.   The question is whether such a transaction can be upheld.

Undoubtedly the sale of this stock by Houghtelin to himself is within the letter of the contract, but we think that by no fair construction of the language used in said contract can it be considered that it was in contemplation of the parties when they made said contract that one member of the

pool could acquire control of a majority of the stock in the pool and sell all the stock to himself for less than its reasonable value against the wishes of any member of the pool. The record shows that the hotel property was mortgaged for $40,000 and the contention of respondents Houghtelin and Cowling is that the minimum price of $125,000 specified in the contract contemplated a sale for $125,000 less the indebtedness of $40,000. The pooling contract is not clear as to whether $125,000 was the minimum to be realized above the indebtedness or whether the indebtedness was to be deducted from that and the sale price to be $125,000 less the indebtedness. Considering the evidence in the record, however, as to the value of the property, we incline to the view that the minimum to be considered as the fair value of the property was $125,000 over and above the indebtedness.

Appellant Robertson offered evidence tending to show the hotel building and lots to be worth from $180,000 to $200,000; the hotel furnishings, $15,000; an automobile bus $3,000; cash on hand about $5,000 or $6,000. By taking the lowest estimate given by respondents, which was $125,000, as the value of the building and lots, and adding to that $23,000 for the furnishings, automobile bus, and cash on hand, which value of the three items mentioned was not disputed, we have a value of $148,000; deducting from this the indebtedness of the company of $40,000, we have left a net value of the hotel property of $108,000; and on this valuation the outstanding stock of 615 shares would have a value of a little more than $175 per share. This estimate is as fair to Houghtelin as can be made on the record and shows him to have purchased appellant's stock for at least $2,000 less than its reasonable value. The pooling contract must be construed as having written into it the principle that the members of the pool would deal with one another honestly and in good faith. Neither appellant Robertson's action in attempting to withdraw his stock from the pool without discharging the lien which he had promised to pay nor the action of Houghtelin in attempting to force a sale

to himself of Robertson's stock at far less than the reasonable value thereof measures up to this principle. We think the duty of the holders of a majority of the stock in the pool to the minority is analogous to that of the owners of a majority of the stock of a corporation to the minority. Discussing a proposal of the majority owners of a corporation to sell to themselves all of the corporate property at a price fixed by themselves far below its actual value, the supreme court of the United States said: ''The injustice of this needs no comment.'' (*Mason v. Pewabic Min. Co.*, 133 U. S. 50, 60, 10 Sup. Ct. 224, 226, 33 L. ed. 524, 529.)

The judgment in the first action is affirmed, with costs to respondent; the judgments in the second and third actions are reversed, with costs to appellants.

Rice, C. J., and McCarthy, J., concur.