(February 25, 1925.)

## HELEN F. THIBADEAU, Appellant, v. JOHN G. LAKE and HERMAN J. BETTEN, Respondents.

[234 Pac. 148.]

VOTING TRUSTS — INTERPRETATION OF CONTRACTS — SPECIFIC PERFORMANCE—FINDINGS OF FACT.

1. A contract giving one party the right as trustee to vote stock of another in a corporation and imposing obligations upon the other party, which is indefinite and uncertain as to the duration of the obligations and of the voting trust, will not be enforced by specific performance.

2. Findings of fact once made need not be repeated upon allegations repeated in other parts of the pleading. A fact once specifically found .is not less a fact by reason of a general recital with relation to another paragraph where the same facts are repeated, that the allegations are untrue and not supported by the evidence.

3. Findings of facts examined and found to be supported by and not contrary to the evidence.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. John M. Flynn, Judge.

Action on contract for voting trust in mining stock. Judgment for defendants. *Affirmed.*

Chas. L. Heitman, for Appellant.

"Where one construction will make the contract legal and another will make it contrary to law or public policy, the former construction will be adopted, if reasonable." (9 Cyc. 586; *United States v. Central Pac. Ry. Co.,* 118 U. S. 235, 6 Sup. Ct. 1038, 30 L. R. A. 173; *Wiggens Ferry Co. v. Chicago & A. Ry. Co.,* 128 Mo. 224, 27 S. W. 568, 30 S. W.

Publisher's Note.

1. Validity of stock-voting agreements, see notes in 14 Ann. Cas. 938; 21 Ann. Cas. 1297; Ann. Cas. 1915D, 800; Ann. Cas. 1917B, 373; Ann. Cas. 1917E, 594; Ann. Cas. 1918E, 252.

430; *Crittenden v. French,* 21 Ill. 598; *Ormes v. Dauchey,* 82 N. Y. 443, 37 Am. Rep. 583; *Lorillard v. Clyde,* 86 N. Y. 384.)

Where an agreement founded on a legal consideration contains several promises, or a promise to do several things, and some of the things to be done are illegal, and the promises can be separated, a promise, so far as it can be separated from the illegality, may be valid. A lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time and for the same consideration. (9 Cyc. 564, 565; *United States v. Mora,* 97 U. S. 413, 24 L. ed. 1013; *Gelpcke v. Dubuque,* 1 Wall. (U. S.) 175, 17 L. ed. 520; *Leavitt v. Palmer,* 3 N. Y. 19, 51 Am. Dec. 333; *Union Locomotive Co. v. Erie R. R. Co.,* 35 N. J. L. 240; *Rand v. Mather,* 11 Cush. (Mass.) 1, 59 Am. Dec. 131; *Corcoran v. Lehigh & Franklin Coal Co.,* 138 Ill. 390, 28 N. E. 759; *Santa Clara Valley Mill etc. Co. v. Hayes,* 76 Cal. 387, 9 Am. St. 211, 18 Pac. 391.)

E. W. Wheelan and Luby & Pearson, for Respondents.

The voting trust agreement is invalid because indefinite and uncertain as to the time of its duration and against public policy. (*Smith v. San Francisco etc. Ry. Co.,* 115 Cal. 584, 56 Am. St. 119, 47 Pac. 582, 35 L. R. A. 309; *English v. Rosenkrantz,* 152 Ga. 726, 111 S. E. 198; *Luthy v. Ream,* 270 Ill. 170, Ann. Cas. 1917B, 368, 110 N. E. 373; *Ohio & M. Ry. Co. v. State,* 49 Ohio St. 668, 32 N. E. 933.)

To be final the agreement must extend to all details which the parties intend to introduce and the material terms cannot be left for future settlement, nor is there a binding contract where although its terms have been agreed on orally the parties have also agreed that it shall not be binding until evidenced by writing. (13 C. J. 290.)

All oral agreements and previous negotiations are merged in the written contract. (13 C. J. 597, 598.)

The motives prompting a breach of a contract are immaterial, and however malicious or wrongful the measure of

compensation remains the same. (*Independent Grocery Co. v. Sun Ins. Co.,* 146 Minn. 214, 178 N. W. 582.)

TAYLOR, J.—This action was brought by appellant, a stockholder and director in the Copper Giant Mining Company, an Idaho corporation, to compel performance by respondents of a contract for the establishment of what appellant terms a voting trust, in the stock of the company, and to recover damages for alleged breaches of the contract. The court made findings of fact and conclusions of law and entered a decree declaring the contract invalid and unenforceable, returning to appellant 42,000 shares of stock which had been by her transferred to the respondents, and denying any other relief or damages. This appeal is from the judgment.

Provisions of the contract material for our consideration are:

Plaintiff agreed to sell to the defendants 42,000 shares of capital stock in the mining company, and to assist them in securing for themselves other shares of stock outstanding, the contract reciting that plaintiff "is unwilling that the control of the majority of the stock of said corporation shall pass out of the hands of her said mother or herself." It was agreed therein that all stock transferred by plaintiff to defendants, or obtained by them in any way should, after purchase, be transferred to plaintiff to be held by her in trust, with power to plaintiff to vote the stock at any and all meetings of the stockholders, and whenever personally unable to be present she to nominate and appoint a proxy, which proxy should cast the vote in accordance with plaintiff's signed instructions: That defendants could sell their stock, but as to any stock sold by them it must be transferred to or still remain in trust with plaintiff with her complete power to vote it. The defendants agreed to "use all reasonable endeavors, both to sell, for the best advantage of the corporation, its treasury stock, and to keep the mine or mines, the property of the Copper Giant Mining Company working and in good working condition," this latter to "be enforceable at the

instance only of the parties of the first part hereto, and their legal representatives, jointly and severally, and shall place no such power of enforcement in the hands of said corporation.'' The contract was signed by defendants and the plaintiff and her mother.

Appellant alleges that this agreement was first drawn and agreed to on October 23, 1917, but not signed, one Vincent being at that time named therein as trustee. That she performed all the obligations thereof on her part by transferring 42,000 shares to respondents and assisted them in buying and securing options upon some 400,000 shares from others; that respondents in violation of the agreement failed to use reasonable efforts to sell treasury stock, or to keep the mines working and in good condition, failed and refused to sign the contract, refused to place their stock in trust with her until March, 1919, sold stock and failed to inform purchasers of the trust or have them put said stock in trust. That it was her right and duty to collect the ''assets of said trust,'' the shares of respondents and their assigns. That if respondents had sold treasury stock the mine could have been kept running and would have paid dividends, and the stock been worth twenty-five cents per share instead of seven cents. Damages are also asked for violation of promises and agreements alleged to have been made to induce appellant to enter into the contract.

Sixteen errors assigned are directed at the findings and conclusions. The court permitted a wide latitude in the introduction of evidence by appellant. Error is assigned that in some instances the court dismissed allegations of the complaint without findings as to such matters, stating that they were ''deemed by the court as immaterial and no findings are made thereon for that reason.'' We have examined the evidence and findings with relation to these matters and hold that they were immaterial and that no findings need have been made thereon.

Counsel devotes a large part of his brief to a discussion of evidence as to agreements, promises, inducements and conditions prior to the making of the contract. This has no

place in this case. This is not an action for rescission. Either appellant must recover on her contract or not at all.

Error is assigned that the court made no findings as to the allegations of paragraph XII of the complaint. The matters therein alleged, so far as material, are covered by paragraph 6 of the findings, and by findings upon allegations repeated in other parts of the complaint. Another error assigned is that the findings in some instances dismiss a whole paragraph with the statement that "the allegations are untrue and not supported by the evidence," when the evidence does support some portion thereof. A fact once specifically found in favor of the appellant is not less a fact by reason of such a dismissal of another whole paragraph in which the same fact is repeated. The complaint is verbose, abounds in irrelevant, immaterial and redundant matter and repetition. At some point in the findings the court found in favor of appellant as to all the material allegations of the complaint on which she was entitled to a finding.

Another error assigned is that the findings as to damages are contrary to the evidence. The court made distinct and certain findings of fact against the appellant as to each item of damages claimed. There was, and in the nature of things could be, no proof, for instance, that respondents' compliance with the contract "would have resulted in production of large dividends." We have carefully examined the record as to each finding.

Granting that the contract should be sustained and that the violations alleged were proven, yet, in the absence of evidence of actual damage, we cannot take counsel's statement in lieu thereof that "this must have been the natural result." The findings made by the court on facts are supported by and are not contrary to the evidence, and this court will not reverse the case upon that ground. (*Crumpacker v. Bank of Washington Co.*, 38 Ida. 534, 223 Pac. 229, and cases cited.)

The findings and conclusion that the contract is indefinite and uncertain as to the time of its duration and is invalid and unenforceable is the only remaining phase of the case to be considered.

Counsel seeks to divide this contract into two parts and to maintain it as to all the other promises or obligations on the part of the respondents even though it be held uncertain, indefinite, invalid and unenforceable as to the voting trust. It is apparent that one of the major considerations of the contract was the so-called voting trust and the maintenance of control by appellant. One of the very first material paragraphs recites that:

"Miss Thibadeau is unwilling that the control of a majority of the stock of said corporation shall pass out of the hands of her said mother or herself."

The contract is indefinite as to the duration of the obligations of respondents as well as to the voting trust or proxy. It is made for no definite time nor can the time be made definite by its terms. It is not such a contract as the court could say should endure for or be performed in a "reasonable time." The considerations and promises on behalf of the parties are interwoven and interrelated. We cannot make a contract for the parties but must construe the one they have made. (*Batchoff v. Melzner* (Mont.), 230 Pac. 48.)

The evidence shows that when this contract was first negotiated appellant held approximately 145,000 shares of the company, respondent Betten 10,000 shares, and respondent Lake not any. There were approximately 1,055,275 shares outstanding of a capitalization of 1,500,000 shares. Appellant and respondent Betten were directors, and respondent Lake was immediately thereafter made a director. At the time of the bringing of this action appellant owned 141,000 shares of the stock and held in her hands, 68,255 shares of respondent Lake, and 108,255 shares of respondent Betten. The appellant's mother, a signer of the contract, had disposed of all of her stock before that time. Something over 1,200,000 shares of stock were issued in all, but, although many shares passed through their hands, appellant and respondents never at any one time owned a majority of the issued stock.

In *Weber v. Della Mountain Mining Co.*, 14 Ida. 404, 94 Pac. 441, we held that:

"It is lawful and legitimate for one stockholder to combine his holdings with the holdings of one or more other stockholders for the purpose of the election of officers and controlling the management and business affairs of the corporation, and this is true until such time as the action of such stockholders becomes wrongful or unlawful or fraudulent."

Many cases can be found supporting the right of the owners of "a majority of the stock of a corporation to cause its affairs to be managed in such a way as they think best," but even then it must be done "with a view to promote the best interests of all of the stockholders," always provided that the purpose for which and the manner in which the power is exercised is lawful." (Fletcher, Cyclopedia Corporations, vol. 3, sec. 1707, and cases cited.) But the decisions seem to require that the voting be done in accordance with some agreement and for a definite time. (*Smith v. San Francisco & Northern Pac. Ry. Co.*, 115 Cal. 584, 56 Am. St. 119, 47 Pac. 582, 35 L. R. A. 309.)

Specific performance of a trust agreement for an indefinite or unreasonable time will not be enforced by a court of equity. (*Clark v. Foster*, 98 Wash. 241, 167 Pac. 908.)

The contract recites:

"In case Miss Thibadeau shall cease to act as trustee because of death, resignation, legal incapacity to act, or otherwise, the said Mr. Lake and Doctor Betten shall become joint trustees in place of her and in case either of them ceases so to act through death, resignation, legal incapacity to act or otherwise, the wife of the one so ceasing to act shall take his place in said trusteeship. . . . .

"Except where and when otherwise provided in writing, this agreement shall inure to the benefit of and be enforceable by the legal representatives of the several parties of the first part and the trust estate herein created shall not terminate on or because of the death of either one or both of the parties of the second part."

Equity ought not to enforce a contract giving a minority stockholder the irrevocable power for such an indefinite

time, to control the vote of a majority of the stock of a corporation without owning it or having any interest in the stock other than to vote it, at least not after the owner who gave the proxy has sold his interest in the stock, nor enforce a contract to permit a minority stockholder to irrevocably and for an indefinite period vote stock he does not own simply to control the corporation as he sees fit, without regard to the wishes of the owner or of other stockholders. (*Gage v. Fisher,* 5 N. D. 297, 65 N. W. 809, 31 L. R. A. 557; *Morel v. Hoge,* 130 Ga. 625, 14 Ann. Cas. 935, 61 S. E. 487, 16 L. R. A., N. S., 1136; *Luty v. Ream,* 270 Ill. 170, Ann. Cas. 1917B, 368, 110 N. E. 373; *Shepherd v. Rockingham Power Co.,* 150 N. C. 776, 64 S. E. 894; *Clowes v. Miller,* 60 N. J. Eq. 179, 47 Atl. 345; 36 Cyc. 587–589.)

The court held that the contract was unenforceable and for that reason granted a return to the appellant of 42,000 shares of stock which she had contributed; thus the appellant received all, if not more, relief than that to which she was entitled under the law and the facts.

Judgment is affirmed. Costs to respondents.

William A. Lee, C. J., Wm. E. Lee, Budge and Givens, JJ., concur.